## SIGLER v. REALTY BOND & MORTGAGE CO. et al.

### No. 14218.

Court of Civil Appeals of Texas. Fort Worth.

April 18, 1941.

Rehearing Denied May 16, 1941.

W. L. Coley, of Fort Worth, for appellant.

R. V. Nichols, James & Conner, E. E. Sanders, Samuels, Foster, Brown & McGee, McLean & Scott, and Glover Johnson, all of Fort Worth, for appellees.

BROWN, Justice.

In June, 1928, J. M. Hard, J. L. Hard and M. F. Winfrey organized a corporation known as Realty Bond & Mortgage Company, and became the first and only directors thereof.

In August, 1928, J. L. Hard and M. F. Winfrey resigned as directors and George H. Colvin, John Hancock, R. M. Bucy, H. L. Wheeler and Gross R. Scruggs were elected as such. Subsequently John Hancock and Gross R. Scruggs resigned from the Board.

In October, 1928, W. H. Slay, L. B. Curd and Dr. H. E. Stout were elected directors.

On November 26, 1928, the appellant, Mrs. Lucy Sigler, a feme sole, subscribed for 30 shares of the capital stock of said corporation and paid therefor the sum of $3,750, giving the said corporation $95.32 in cash and transferring to it certain shares of stock which she owned in Tarrant County Building & Loan Association (also a corporation).

Realty Bond & Mortgage Company did not succeed, became insolvent and was placed in the hands of a receiver, and on November 26, 1932, appellant brought suit against Realty Bond & Mortgage Company, its receiver, Lem Billingsley, J. M. Hard, J. L. Hard, M. F. Winfrey, A. P. Barrett, L. B. Curd, C. E. Gillam, R. M. Bucy, W. H. Slay, Dr. H. E. Stout, John B. Collier, Jr., Gross R. Scruggs, W. B. Powell, Walter Bockstaher, T. R. Rogers, Harl L. Wheeler and others not necessary to mention.

The gist of the suit is that these defendants caused to be issued and published and placed in the hands of sales agents a prospectus consisting of 42 pages, to be used by such salesmen in soliciting and inducing the purchase of capital stock of the corporation, and that "by reason of the representations made in said prospectus, and by reason of the representations made by representatives and sales agents for said Realty Bond & Mortgage Company and by reason of the prominence of the parties named in said prospectus, as officers and directors of said corporation. Plaintiff believing in and relying upon the statements made in said prospectus, and in the letters of commendation therein and thereto attached, and by reason of her knowledge of the prominence and outstanding business qualifications of a number of said officers and directors of said corporation. Plaintiff was induced to and did purchase stock in said Realty Bond & Mortgage Co. on to-wit, Dec. 1st, 1928, paying cash therefor in the total sum of $3,750.00."

She alleged further that the said corporation "never had any foundation in fact, but that its whole organization was conceived and carried out in fraud, in this, that the $50,000.00 note (the asset on which the corporation obtained its charter) hereinbefore referred to, dated June 15, 1928, was false and fraudulent, given by the Beverly Hills Land Co., long after its right to do business in the State of Texas had been denied, as hereinbefore stated, given without any consideration in fact, and executed by the defendants Harl L. Wheeler, Karl A. Crowley and John W. Garnett as the Beverly Hills Land Co. for the sole and only and fraudulent purpose of enabling the defendants J. M. Hard, J. L. Hard and M. F. Winfrey, to mislead and deceive the Secretary of State, * * *" for the purpose of fraudulently obtaining a charter for the corporation.

The petition alleges that the corporation was not at any time in sound financial condition, that it was not solvent, was not reliable and was not in any manner deserving of public trust or confidence, and that all the defendants either knew such facts or by the exercise of ordinary care could and should have known them. She sues for damages in the sum of $3,750.

Defendants Karl Crowley, John W. Garnett, A. P. Barrett, C. E. Gillam and R. M. Bucy were dismissed from the suit.

The cause was tried to the court without the assistance of a jury and resulted in a judgment that plaintiff take nothing as against any of the defendants.

Findings of fact and conclusions of law were made and filed by the trial court. Separate findings as to Gross R. Scruggs were made, and findings were made as to all other defendants in one other set of findings.

As to the findings and conclusions made covering all defendants except Scruggs, the plaintiff objected as follows: "That not one of the seven findings of fact and the five conclusions of law are supported by the evidence offered and received in this case, but that said findings of fact and conclusions of law should be amended to read as follows:" This objection is then followed by 45 paragraphs purporting to show the court what should be found, and 3 paragraphs that cover conclusions of law which

the plaintiff asks that the trial court find; and all in lieu of the findings actually made by the trial court.

The findings and conclusions filed by the trial court as to Gross R. Scruggs are objected to in as general a manner as the other said objections, with no proposed findings in lieu of those made.

There are seven assignments of error in appellant's brief and eleven propositions.

Propositions 1, 2 and 3 attack the legality of the transactions whereby the corporation Beverly Hills Land Company executed the $50,000 vendor's lien note and the transfer of such note to the persons who, in turn, incorporated Realty Bond & Mortgage Company, with such note as the asset on which such corporation was brought into being.

Appellant cannot thus attack the validity of the act of the State of Texas in granting corporate charters to these corporations, nor can she thus attack the corporations because of the acts thus complained about. Sayers v. Navillus Oil Co. et al., Tex.Civ.App., 41 S.W.2d 506, writ refused, Scharbauer et al. v. Lampasas County, 235 S.W. 533, Com. of App'ls. adopted by Supreme Court, 10 Tex.Juri., para. 40, page 632.

The fourth proposition contends that where the payees of a false note pretend to issue and exchange certificates of stock, issued by the payees as stockholders of the corporation, to themselves as individuals, under the circumstances alleged to have taken place in the transaction, "the whole transaction is ultra vires, illegal, unlawful and a fraud, not only upon the State, but upon each purchaser whose money is thus obtained and applied" to the purchase of stock issued under such circumstances.

This proposition in effect attacks the legality of the corporation, whose stock appellant purchased.

The fifth proposition contends that where the makers of a false note and the payees thereof, in order to induce the public to buy, procure prominent and successful business men to act as officers and directors of the company that was falsely organized, and such men consent to so act and hold themselves out, or permit themselves to be held out as such officers in such fraudulently organized corporation, it becomes the duty of such persons to know all of the facts and they are chargeable with notice of everything that a careful and prudent investigation would have disclosed.

This constitutes an attempt to hold the directors personally liable even though they had no personal connection with the transaction whereby appellant was induced to purchase stock in the corporation.

This cannot be done as is reflected in the opinions in many cases, notably, Vol. 11 Tex.Juri., para. 362, page 7, and para. 368, pages 15, 16, and cases cited.

The sixth proposition contends that all of the persons referred to in the fifth proposition, by reason of their said acts and the legal duty devolving upon them are jointly and severally liable for whatever loss a purchaser of stock may sustain.

The seventh proposition contends that when a prospectus containing letters of prominent and successful business men is issued and placed in the hands of sales agents, and such is presented to prospective purchasers of stock, the purchasers have a right to believe in and rely upon the statements and representations contained in the prospectus and letters, and if the purchasers do in fact so believe and rely upon the same and are deceived thereby to their damage, the parties who issued the prospectus, or permitted it to be issued, and who hold themselves out, or permit themselves to be held out as officers and directors of the corporation, are jointly and severally liable to those who are induced to invest money and are damaged thereby.

The eighth proposition contends that, under the circumstances detailed in the seventh proposition, all such persons, as a matter of law, are jointly and severally liable to purchasers of stock for any losses that may be sustained.

We have examined the prospectus and find nothing in it that is shown to be a false statement of a material fact, and we find no evidence showing that any statement of a material fact therein was untrue.

The prospectus does not contain the individual letters referred to in these propositions. These letters were written by R. M. Bucy (who was dismissed from the case), Dr. H. E. Stout and L. B. Curd.

Dr. Stout's letter simply states that in his opinion an investment of funds in the company "is a good proposition to any man who wants a safe and profitable investment."

There is no evidence tending to show that Dr. Stout did not honestly believe his opin-

ion to be well-founded, and there is no evidence in the record tending to show that the company became insolvent for any reason other than the "depression" which caused a collapse of thousands of concerns between the fall of 1929 and the several lean years that followed.

We find absolutely nothing in Mr. Curd's letter that is calculated to deceive, or mislead, a prospective purchaser.

The ninth proposition contends that where the makers of a false note (the $50,000 note) know that the corporation maker has had its right to do business in Texas forfeited, and "that the payees in the note have not sold to them or to the dishonored corporation, land, as recited on said note, and has not retained a vendor's lien," and that neither the dishonored corporation nor they received money, labor or property of any kind for the note, and that the payees intend to use the note to deceive and mislead the Secretary of State and induce him to issue a charter to the payees, and know further that as soon as the charter is issued, the said note and the "pretended certificates of stock" are to be placed in escrow until money can be obtained from the public to capitalize the corporation and "to pay the debts of the dishonored corporation", and "to give to it, or its stockholders, $61,000.00 in money," the president and secretary of the corporation that executed the note and the prominent and successful business men who held themselves out (or permitted this to be done) as directors and officers of the corporation are all guilty of fraud and are jointly and severally liable to the persons who purchased stock for the losses they may have sustained.

The tenth proposition contends that when the makers of the said "fraudulent" note and the said prominent and successful business men falsely represent that another prominent and successful business man is an officer and director of a corporation, without his knowledge and consent, all such persons are guilty of fraud and liable to any person who loses money by relying upon such false and fraudulent representation.

The eleventh proposition contends that when the makers and payees of a "false note" are sued as makers and endorsers and they neither make the defense of their inability to make such a note because no franchise tax had been paid by the corporation maker, nor the defense that they received no consideration for the note, but suffer a default judgment to go against the "dishonored corporation" and the payees and endorsers, and judgment is rendered in favor of the receiver of the fraudulent corporation organized on such note as an asset, to which an innocent investor of stock in the "fraudulent corporation" is not a party, the judgment is not admissible in evidence against such innocent stock purchaser and she is not bound by the judgment, and it does not constitute a defense to her cause of action.

The receiver for Realty Bond & Mortgage Company brought suit on the said $50,000 note and secured the judgment referred to above, together with a foreclosure of the vendor's lien on the real estate, given to secure the note, as against the Beverly Hills Land Company, the corporation maker and the payees who endorsed the note.

█ This judgment was admissible in evidence because the plaintiff charged that the note and lien were fraudulently made for the fraudulent purpose of creating a pretended asset with which Realty Bond & Mortgage Company was incorporated under the laws of Texas. This judgment established the fact that the making of the note and the lien constituted a bona fide transaction, and that the execution thereof created a valid asset belonging to the proposed corporation.

The trial court made findings of fact and reached conclusions of law wholly exonerating all the defendants of any wrongdoing, and judgment was rendered that plaintiff take nothing as against any of them.

It would needlessly extend this opinion to quote these findings and conclusions and the evidence introduced supporting the same.

█ Suffice it to say that the appellant does not point out wherein any finding is not supported by evidence, or wherein any finding is contrary to the evidence adduced.

The assignments of error are overruled and the judgment is affirmed.