Jack K. WELLS, Jr., Individually, as Trustee for Jack K. Wells, III, and as Administrator of the Estate of J. K. Wells, Deceased, Appellant,

v.

Clyde L. HISKETT et al., Appellees.

No. 6857.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 16, 1956.

Rehearing Denied March 22, 1956.

Edwin M. Fulton, Gilmer, Pearson & Moon, Oklahoma City, Okl., Earl Roberts, John M. Smith, Longview, for appellant.

Earl Sharp, Longview, Sam S. Gill, Oklahoma City, Okl., Hurst & Burke, Wm. Hurwitz, Longview, for appellees.

DAVIS, Justice.

J. K. Wells, hereinafter referred to as "Mr. Wells," and Minnie I. Hiskett Wells, hereinafter referred to as "Mrs. Wells," were married in Oklahoma on September 20, 1922. Each of them had previously been married. Mr. Wells had one child by his first marriage, viz., Jack K. Wells, Jr.; and Mrs. Wells had two children by her first marriage, viz., Clyde L. Hiskett and Floyd G. Hiskett. No children were born of the marriage between Mr. and Mrs. Wells.

Prior to her marriage to Mr. Wells, Mrs. Wells worked as a clerk and buyer in a millinery department of a store. Prior to said marriage, Mr. Wells was engaged in different kinds of business and owned several business lots and buildings in Oklahoma City. They were both making their home at a hotel at the time of their marriage and continued to live in a hotel until each died.

After said marriage, Mrs. Wells worked but very little, if any. Mr. Wells commenced buying and selling oil and gas leases and minerals. In the early part of 1931, he went to East Texas to do some trading and while there he met one H. P. Gann, a resident of Oklahoma, who claimed to have several years' experience in the oil well drilling business. Gann had neither money nor credit. Mr. Wells had both money and credit. So they entered into an agreement whereby Mr. Wells was to furnish the money and credit and Gann would furnish his "know-how" and they would go into the oil drilling and producing business and share equally in the profits and losses. Pursuant to the agreement, apparently reached in East Texas, they went to Oklahoma City, organized a corporation, secured a charter on May 9, 1931, from the State of Oklahoma, with Mr. Wells and Mr. Gann each being issued 99 shares of stock and 1 share each being issued to two others to comply with the laws of Oklahoma. Then they came to Texas and secured a permit to do business in this State from the Secretary of State. The corporation was given the name "Wells and Gann Drilling Company," hereinafter referred to as the "Corporation."

The Corporation opened an office in Tyler; also a bank account in the Citizens National Bank. The Corporation bought a drilling rig in Oklahoma and had it moved into the East Texas oil field where several oil wells were drilled on contract with others.

On August 13, 1931, the Corporation acquired a lease upon 4.78 acres of land in the Mary Van Winkle Survey in Gregg County, Texas, upon which five producing oil wells were drilled. The lease was paid for by the Corporation; $250 in cash and $14,090 in oil. The Corporation also acquired other leases in Gregg and Henderson Counties, Texas.

It was agreed and stipulated in open court that it would not be necessary to present evidence concerning any of the property except the 4.78-acre lease and that the judgment of the court on the 4.78-acre lease would govern the rights of the parties to the other leases.

The Corporation was dissolved by order of the District Court of Oklahoma County, Oklahoma, on the 23rd day of January, 1943, effective February 1, 1943. Upon dissolution of the Corporation, a $99/200$ interest in and to the leases owned by the Corporation was conveyed to Mr. Wells in consideration of the cancellation of his 99 shares of stock. The other $101/200$ interest was conveyed to the other shareholders in proportion to their shares of stock in consideration of the cancellation of same.

Mrs. Wells died, intestate, in Oklahoma City on January 12, 1953. Mr. Wells died, testate, in Oklahoma City on February 28, 1954. Mr. Wells willed all his property to his son, Jack K. Wells, Jr., except $10,000 which he left in trust for his grandson, Jack K. Wells, III, with Jack K. Wells, Jr., as Trustee.

On July 21, 1954, Clyde Hiskett and Floyd G. Hiskett, children and only heirs of Mrs. Wells, formerly Minnie I. Hiskett, deceased, as plaintiffs in the trial court, filed suit against Jack K. Wells, Jr., individually, as Trustee for Jack K. Wells, III, and as Administrator of the Estate of J. K. Wells, deceased, as defendants in the trial court.

On January 5, 1955, Floyd G. Hiskett, in order to circumvent the inhibition of Article 3716 of the Revised Civil Statutes of Texas, known and referred to as the "Dead Man Statute," purportedly conveyed all his alleged interest in the estate of his mother, Minnie I. Wells, to his step-son, Billy J. Morrison, and Morrison was substituted as plaintiff in lieu of the said Floyd G. Hiskett.

Appellees' statement of the nature and result of the suit is as follows:

"This was an action, the 'First Count' being in trespass to try title, and the 'Second Count' alleging in the alternative that the property was community property of J. K. Wells and wife, Minnie I. Wells, or it was acquired under circumstances giving rise to an express, or resulting or constructive trust in favor of Minnie I. Wells, under whom appellees claim title; and for an accounting. The accounting feature was severed by agreement and upon a motion for judgment on the jury verdict and to disregard certain findings of the jury judgment was entered in favor of appellees."

Trial was to a jury which found that: 1. Mrs. Wells, Mr. Wells and H. P. Gann entered into an agreement immediately prior to May 9, 1931, to go into the oil drilling and producing business in Texas. 1-A. Mrs. Wells did not agree at any time and place to furnish $2,500. 1-B. Mrs. Wells was not to receive a ¼ interest in such business. 1-C. Mrs. Wells did not furnish Mr. Wells $2,500 on or about May 9, 1931. 1-D. Mrs. Wells' money was not used in the furtherance of the business of the Corporation. 1-E. Mr. Wells did not mix any such funds with the funds of the Company. 1-F. Mr. Wells did not mix such funds in such manner that no exact record was kept of the use thereof. 2. Mrs. Wells did furnish Mr. Wells $1,500 in connection with the acquisition of the 4.78-acre lease. 2-A. Mrs. Wells was not to have a ¼ interest in said lease for furnishing said $1,500. 3. Mr. Wells did not hold ½ of the stock issued to him by the Corporation for Mrs. Wells. 4. The acquisition of the 4.78-acre lease by the Corporation resulted wholly or in part from the toil, talent, labor, industry and effort of H. P. Gann rendered and exercised in the State of Texas. 5. The acquisition of the 4.78-acre lease by the Corporation resulted wholly or in part from the toil, talent, labor industry and effort of Mrs. Wells rendered and exercised in the State of Texas. 6. The acquisition of the 4.78-acre lease by the

Corporation resulted wholly or in part from the toil, talent, labor, industry and effort of Mr. Wells rendered and exercised in the State of Texas. 7. Mr. and Mrs. Wells were not domiciled in Smith County, Texas, immediately prior to August 13, 1931. 8. Mr. Wells, after payment of the current bills of the Corporation, divided the net profits of the Corporation equally between himself and Gann. 9. The other holders of stock certificates did not share in a proportionate distribution of the net profits of the Corporation along with Mr. Wells and Mr. Gann. 10. Mr. Wells paid no consideration for the stock issued to him by the Corporation on May 9, 1931. 11. Mr. and Mrs. Wells were domiciled in the State of Oklahoma from May 9, 1931, until their respective deaths. 12. The cause of action asserted by plaintiffs against the defendant did not accrue more than two years prior to the filing of this suit on July 21, 1943. 13. The cause of action asserted by the plaintiffs against the defendant did not accrue more than four years prior to the filing of this suit on July 21, 1954. 14. Jack K. Wells, Jr., and Jack K. Wells, III, and those under whom they claim, have been in peaceable, adverse and continuous possession of the 4.78-acre lease, cultivating or enjoying the same for a period of ten years or more prior to the filing of this suit on July 21, 1954. 15. Mr. Wells paid in excess of $10,000 during the year 1931 to or on behalf of the Corporation. 15-A. The payment of such money was not in payment for 99 shares of stock issued to Mr. Wells by the Corporation on May 9, 1931.

The verdict was received and both plaintiffs and defendant filed motions to disregard the jury findings unfavorable to them and asked the court to render judgment in their favor. Defendant's motion was overruled. Plaintiffs' motion was granted. Defendant's motion for new trial was overruled. Hence the appeal.

Appellant brings forward 16 points of error. By Point 1 he complains of the action of the trial court in disregarding the corporate entity of the Corporation and in rendering judgment for appellees. The

trial court entered judgment for appellees for title and possession of an undivided ½ interest in and to the ⁹⁹⁄₂₀₀ interest in the leases acquired by the Corporation that was conveyed to Mr. Wells upon dissolution of the Corporation. The only reason assigned by the trial court for his action is found in the judgment and is as follows: "It is, accordingly ordered, adjudged and decreed that for the purpose of this suit based upon the principles of equity, fairness and justice, and to avoid the circumvention of Article 4619, Revised Civil Statutes of Texas [Vernon's Ann.Civ.St. art. 4619], the corporate existence of Wells and Gann Drilling Company should be, and the same is hereby disregarded."

■ On page 24 of appellees' original brief, we find the following statements contained in the first two sentences: "Appellees' suit is not an attack on *the corporate existence or corporate activities* of Wells and Gann Drilling Company as such. *It is not a suit to avoid any corporate act or the acquisition or disposition of property by it during its corporate existence because of failure to comply with the requirements of law."* (Emphasis ours.) Then in the second paragraph on the same page of appellees' brief, we find the following statement: "The suit at bar is for an interest in property distributed in kind *after dissolution.* Claim being made on the ground that though taken in the name of the corporation it was acquired under circumstances impressing it as community property of husband and wife, Minnie I. and J. K. Wells, or property held in trust for her benefit." (Emphasis appellees'.) From the statements of appellees in their statement of the nature and result of the suit, as well as the other quoted statements from their brief, their position in this Court is altogether different from that taken by the trial court in arriving at his judgment. Although appellees alleged fraud and deceit on the part of Mr. Wells in the formation of the Corporation and the acquisition of the property, such alleged ground of recovery was definitely abandoned in the trial court because no issue was submitted on the question of fraud and none was requested by the appellees. Having failed to request issues, on such allegation, such ground of recovery was waived. Rule 279, Texas Rules of Civil Procedure.

There was no evidence of fraud in the case and the trial court correctly stated upon the hearing of the motion for judgment " * * * that the matter of fraud, insofar as the corporation is concerned, can be completely disregarded. I do not consider the creation of that corporation as being for a fraudulent purpose, neither do I feel that in the operation of the corporation there is any evidence that there was ever any fraud perpetrated and practiced as against Mrs. Wells * * *"

■ Appellees alleged in their petition that the Corporation was organized and conducted in a manner for the purpose of circumventing Articles 1308 and 4619 of the Revised Civil Statutes of Texas. No evidence was offered to show that the Corporation was so organized or conducted. No issue was submitted and none was requested by the appellees on such alleged ground for recovery and if there had been evidence of such fact, the ground of recovery was waived. Rule 279 T.R.C.P.

It will be noted that the jury found in response to special issue No. 3 that Mr. Wells did not hold ½ of the stock issued to him by the Corporation for Mrs. Wells. Appellees did not except to the submission of that issue and the overwhelming preponderance of the evidence in the case supports the jury finding thereon. Although the trial court made no finding that the property was held in trust by Mr. Wells for Mrs. Wells, he was precluded from so doing by that finding of the jury.

In view of the position of the appellees taken in this court that this is a suit for property held in trust for the benefit of Mrs. Wells, then the door of recovery is closed against them by the overwhelming preponderance of the evidence in the case and the jury finding to such issue No. 3.

Under the state of the record and the position taken by appellees in this court, we do not feel that it is necessary to discuss

the many reasons for which courts will disregard the fiction of a corporate entity. Just about every kind of reason for which courts have and will do so are set out in Vol. 1, Sec. 5, Hildebrand Texas Corporations, beginning on page 31; and Continental Supply Co. v. Gilmore, Tex.Civ. App., 55 S.W.2d 622, error dismissed. We find neither of the reasons stated in either authority to be shown by the record in this case. Further, either reason must be supported by fact (proved). If evidence of any such fact had been offered, appellant would have been entitled to a jury finding thereon. Further, there cannot be a reason without a fact to support it.

Appellant urges most earnestly that there is no basis in the record to justify the action of the trial court in disregarding the corporate entity of the Corporation and in rendering a judgment for appellees. With this contention we agree.

■ While appellees alleged that the Corporation was organized and maintained without the knowledge and consent of Mrs. Wells in fraud of her rights, and for the purpose of depriving her of her community property rights contrary to the laws of Texas, there are no findings in this case and no evidence justifying a conclusion, as a matter of law, that Mr. Wells was using the corporate entity to defraud or deceive his wife or to circumvent the community property laws of Texas. The trial court found, and correctly so, that the Corporation was not created for a fraudulent purpose, and that there was no evidence of any fraud perpetrated or practiced against Mrs. Wells in the operation of the Corporation. The record does not contain the slightest suggestion that Mr. Wells was perverting the separate corporate entity in order to circumvent the Texas law or to defraud his wife.

■ A corporation ordinarily is to be regarded as a separate entity, distinct from the members who compose it, with attributes, rights and liabilities of its own and not dependent upon or similar to the rights of its stockholders. It can only act through its officers or agents. And its acts, through its officers or agents, are the acts of the corporate entity; not the acts of the stockholders individually. Corporate property belongs to the corporate entity and stockholders individually are ordinarily without authority to dispose of it. Actions in relation to the corporate property must ordinarily be brought in its corporate name. Its stockholders, as such, may not maintain actions to recover possession of the corporate property. 13 Am.Jur. 157, sec. 6; 18 C.J.S., Corporations, § 5, p. 370; 1 Hildebrand Texas Corporations, 21, sec. 4; Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216; Diserens v. Ross, Tex.Civ.App., 251 S.W. 2d 946; Trott v. Flato, Tex.Civ.App., 244 S.W. 1085.

■ In order for courts to disregard the corporate entity, it must appear that the corporate cloak is used by those in control as a sham or pretense to perpetrate fraud, justify wrong or defeat public convenience. Schenley Distillers Corp. v. United States, 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181; Coryell v. Phipps, 5 Cir., 128 F.2d 702, affirmed 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363; Ruberoid Co. v. North Texas Concrete Co., 5 Cir., 193 F.2d 121; Moody-Seagraves Ranch v. Brown, Tex.Civ.App., 69 S.W.2d 840; First Nat. Bank in Canyon v. Gamble, 134 Tex. 112, 132 S.W.2d 100, 125 A.L.R. 265; Landa v. Whitfield, Tex.Civ.App., 131 S.W.2d 310; State v. Swift & Co., Tex.Civ.App., 187 S.W.2d 127; 13 Am.Jur. 161, sec. 7; 18 C.J.S., Corporations, § 6, p. 378.

Professor Wormser generalizes the rules for disregarding a corporate entity in the following language (12 Columbia Law Review 517; 1 Hildebrand, Texas Corporations 33, sec. 5):

" 'When the conception of corporate entity is *employed* to defraud creditors, to evade an existing obligation, to circumvent a statute, to achieve or perpetuate monopoly, or to protect knavery or crime, the courts will draw aside the web of entity, will regard the corporate company as an association of live, up-and-doing, men and women

shareholders, and will do justice between real persons.'" (Emphasis added.)

And Professor Hildebrand in his work "Texas Corporations" announces the following general rules applicable to this subject (1 Hildebrand, Texas Corporations 34, sec. 5):

> "The modern tendency of courts is to disregard the corporate entity when same is invoked as a means of protection against fraud, where the corporate organization is illegally conducted, *where* the corporation is used as a mere sham and devise to protect individuals against liability, where the corporation did not exist except practically as a shadow of the individual, where the corporate entity is used to evade existing legal obligations, where the corporate and individual transactions have not been distinct . * * *"

The facts do not bring this case within the scope of any of the rules announced, or within any of the authorities cited. A corporate entity may not be disregarded simply because it stands as a bar to a litigant's recovery of property. Curry v. Port Lavaca Channel & Dock Co., Tex.Civ.App., 25 S.W.2d 987, no writ history.

Appellees also alleged that the Corporation was not duly incorporated; that its permit to do business in Texas was obtained by fraud; that no cash was paid for the corporate stock, and, therefore, the stock was void; and that its charter and permit were in violation of the laws of Texas and Oklahoma. The record in this case shows that the corporate charter of the Corporation granted by the State of Oklahoma was regular and valid; that the permit and renewal permit issued this Corporation by the State of Texas was valid and legal; and that adequate consideration was paid by Wells, Gann and the other stockholders for their stock in the Corporation. We must give "full faith and credit" to public acts of other states, which includes the issuance of charters to corporations. Art. 4, Sec. 1, U.S.Const.; 15 C.J.S., Conflict of Laws, § 3, p. 845.

Appellees, however, are not permitted to question the validity of the Oklahoma charter or the Texas permits of this Corporation, nor are they permitted to question the legality of the stock it issued. They cannot attack the validity of the acts of the States of Oklahoma and Texas in granting the charter and permits to this Corporation, nor can they attack the Corporation because of the acts complained of or its act in issuing its stock. We must presume that the Corporation complied with the laws of both states, else those states would not have granted the charter and permits. And we further must presume that the Corporation complied with the Constitution and laws of Oklahoma in the issuance of its stock, else the State of Oklahoma or the Corporation itself would have taken proper action. This record does not disclose any action taken by the State of Texas or Oklahoma, or by the Corporation as to the matters complained of by appellees. Sigler v. Realty Bond & Mortgage Co., Tex.Civ.App., 150 S.W.2d 845; Sayers v. Navillus Oil Co., Tex.Civ.App., 41 S.W. 2d 506; Commercial Standard Ins. Co. v. Nelson Mortgage Co., Tex.Civ.App., 138 S.W.2d 169; Jordan v. Grandfield Bridge Co., Tex.Civ.App., 290 S.W. 866, 868; Brennan v. City of Weatherford, 53 Tex. 330, 331. Point 1 is sustained.

By Point 6, appellant complains of the action of the court in not disregarding the jury findings to special issues Nos. 4, 5 and 6 wherein the jury found that the acquisition of the 4.78-acre lease by the Corporation resulted, wholly or in part, from the toil, talent, labor, industry and effort of Gann, Mrs. Wells, and/or Mr. Wells, because: (1) Such findings are not supported by sufficient evidence; (2) such findings are against the great and overwhelming weight and preponderance of the evidence; (3) such findings are meaningless, nullities, and destroy each other; and (4) such findings are wholly insufficient to support the judgment rendered for appellees. Without a lengthy

discussion on the question, we think the findings are nullities. 41–B Tex.Jur. 803, sec. 582; Pearson v. Doherty, 143 Tex. 64, 183 S.W.2d 453; Kilgore v. Howe, Tex.Civ.App., 204 S.W.2d 1005, no writ history.

■ If we are in error that the findings destroy each other, we conclude as a fact that the finding of the jury to said special issues Nos. 4, 5 and 6 are against the overwhelming weight and preponderance of the evidence. According to the evidence Mr. Wells owned considerable real estate rental property in Oklahoma City at the time he and Mrs. Wells were married. He had in excess of $16,000 on deposit on two banks in Oklahoma City at the time the charter was issued to the Corporation. His income for the first five months of 1931 was in excess of $17,000. Every act he performed in Texas was while he was a resident of the State of Oklahoma and he was acting as secretary-treasurer of the Corporation. We think one outstanding piece of evidence in this case which impeaches every contention of the appellees that the property involved was community property based upon the findings of the jury on these issues is found in a report of an examining officer of the Federal Income Tax Collector made April 23, 1945. In that report, the examining officer found: "The returns investigated are not joint returns. (State reason for so holding—Dee IT 2875, C.B. XIV—1—p. 81). *Wife had no income.*" · (Emphasis ours.) The examining officer surely discussed these matters with both Mr. and Mrs. Wells. If the property had been community property, we do not think Mr. Wells would have paid the extra assessment of $962.35 income taxes. The report of the examining officer further shows that Mr. Wells agreed to the adjustment. He being the one who had to pay the extra taxes, interest, and penalty, if any, his consent was all that was necessary to the adjustment.

The record shows that Mrs. Wells had less than $700 deposited to her account in any bank during the year 1931. There are allegations by the appellees that in the agreement to go into the oil drilling and producing business between Mr. and Mrs. Wells and H. P. Gann, that Mrs. Wells was to furnish *the* money and credit, Mr. Wells was to furnish credit and services, and Gann (a man with many years of experience in the oil well drilling business, but who was broke and had neither money nor credit) was to furnish the "know-how" and Mrs. Wells was to receive only a ¼ interest in the business. The jury was not impressed with the testimony of appellees' witnesses to the effect that Mrs. Wells always kept large sums of money in a little green box that looked like a "fishing tackle box", or secreted upon her person, or any of the other testimony relative to her available funds, or the showing of her presence with Mr. Wells many times during the life of the Corporation.

The theories by which appellees seek to uphold the judgment of the trial court in connection with these, as well as other issues, would be to disregard all the laws of Oklahoma and some of the State of Texas, as well as the public act of the State of Oklahoma in issuing the charter to the Corporation, are exceptionally ingenious and extremely confusing. They quote from numerous decisions, texts, and statutes; and, such other publications as Steinbeck's "Grapes of Wrath," "Collier's Encyclopaedia," "Federal Reserve Bulletin on Bank Failures," and an annual report of the "Comptroller of Currency." This is in an effort to try to convince the court that Mr. Wells did not have sufficient funds during the times in question to do the things that were done. Yet, they would like for the court to believe that Mrs. Wells acquired large sums of money in the late 'teens and early 20's as a clerk and buyer in the millinery department of a store. The jury was not impressed with the testimony in support of this theory.

Appellees cite and rely heavily upon the recent case of Turner v. First Nat. Bank & Trust Co., Okl., 292 P.2d 1012, 1014, where suit was brought to determine the rights of the husband and wife in property acquired by them while the Oklahoma com-

munity property law of 1945 was in effect. The Supreme Court of Oklahoma, in discussing the joint efforts of husband and wife said:

"Separate property *in Texas* is that owned by either spouse before marriage, plus that acquired afterwards by gift, devise or descent. *All other property acquired during coverture constitutes community property,* including the income from the separate property of the spouse.

"* * * *the courts of Texas* and other states have often recognized the endless tasks and tiring and monotonous burdens of the wife in maintaining a home, bearing children, and caring for their endless needs and demands. * * *"

That case can be readily distinguished from the case at bar. First, this property was acquired by Oklahoma residents at a time when the community property laws of Oklahoma were not in effect. Second, Mrs. Wells lived in a hotel from the date of her marriage until the date of her death. She did not perform any of the endless tasks and tiring and monotonous burdens of a wife in maintaining a home. She bore no children. There is no evidence that she cared for any of the needs and demands of her husband in the home. She cooked no meals. In other words, there is no evidence that she ever performed the slightest task of keeping and maintaining a home.

■ We have carefully examined the entire statement of facts and find no evidence of any probative force that will support the jury finding to special issue No. 5, and the finding is contrary to the overwhelming preponderance of the evidence to the contrary. The finding of the jury to special issue No. 6 is without any force or effect because the toil, talent, labor, industry and effort exercised and performed by Mr. Wells in Texas was that of an agent of the Corporation, not as an individual. The jury finding to special issue No. 4 is immaterial. Point 6 is sustained.

■ We think what we have said in connection with point No. 6 also disposes of appellant's point No. 10 wherein he complains of the finding of the jury to special issue No. 2 to the effect that Mrs. Wells advanced to J. K. Wells the sum of $1,500 in connection with the acquisition of the 4.78-acre lease because the evidence was insufficient to support the finding of the jury and establish a trust for any specific interest in the lease. If the money was advanced, it was advanced to the Corporation and the claim, if any, would be against the Corporation. The point is sustained.

Appellant contends in his Points Nos. 2, 3 and 4 that the stock issued to Mr. Wells was his separate property and the leases being conveyed to him in kind upon dissolution of the Corporation vested the title to said leases in him as his separate property and the court erred in rendering judgment in favor of appellees for an undivided ½ interest therein.

■ It is admitted that the stock in the Corporation issued to Mr. Wells was his separate property, unless he held it in trust for Mrs. Wells. It is also admitted that the leases conveyed to Mr. Wells by the Corporation were conveyed to him in consideration of the cancellation of the stock held by him in the Corporation. Therefore we find that such property was not held in trust for Mrs. Wells, maintained its separate property character, and remained the separate property of Mr. Wells as a matter of law. Section 9745, O.S. 1931, Title 18, sec. 56, Oklahoma Statutes, 1941; sec. 11899, O.S.1931, Title 60, sec. 311, Oklahoma Statutes 1951; Pridemore v. Duncan, 146 Okl. 70, 293 P. 266; Jones v. Farris, 180 Okl. 341, 69 P.2d 344; Bowman v. Hulsey, 200 Okl. 592, 198 P.2d 421; Tasher v. Foster Lbr. Co., Tex.Civ. App., 205 S.W.2d 665, no writ history. Points 2, 3 and 4 are sustained.

Based upon the position taken by appellees in this court and our holdings on the above points, we do not deem it necessary to discuss the remaining points of error by the appellant. If such were necessary to

the disposition of the case, each point would be sustained.

For the errors hereinabove pointed out, the judgment of the trial court is reversed and the judgment is here rendered that appellees take nothing.

Reversed and rendered.