Glenn Porter JOHNSON, Appellant,

v.

The FIRST NATIONAL BANK OF FORT WORTH, Independent Executor, Appellee.

No. 15853.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 1, 1957.

Scott L. Daly, Fort Worth, for appellant.

Rawlings, Sayers, Scurlock & Eidson; and Nelson Scurlock, Fort Worth, for appellee.

BOYD, Justice.

Appellee The First National Bank of Fort Worth, Independent Executor of the Estate of W. A. Johnson, deceased, filed

suit against appellant Glenn Porter Johnson for a declaratory judgment to determine the validity of a claim filed with the Executor by appellant, and to determine whether a stock dividend declared during the time appellant was the wife of the deceased was the separate property of the deceased.

Appellant and the deceased were married on December 26, 1946, and the marriage relation continued until the death of Mr. Johnson on April 27, 1954. The basis of the claim filed by appellant was an alleged indebtedness of the deceased to appellant, represented by three notes. One of the notes, in the principal sum of $5,000, was executed on January 2, 1945, before the marriage of the parties; one note in the principal sum of $5,375 was executed on February 10, 1949; and the other note in the principal sum of $5,312.50 was executed on May 10, 1949.

Although appellant's bank account showed a balance of only $289.14 on the date of the marriage, it was stipulated: that before her marriage appellant accumulated considerable property and money which she had at the time of the marriage; that prior to the marriage appellant had made several loans of Mr. Johnson which were repaid, except that represented by the $5,000 note mentioned above; that after the marriage appellant continued to maintain in different banks checking accounts in the name of G. C. Porter; that she deposited in those accounts money she received from rents and from sales of her property; that she was the only person authorized to draw on said accounts, and she drew checks thereon as she desired; that Mr. Johnson did not attempt to control said accounts.

It was shown that on February 10, 1949, the date of the $5,375 note, there was withdrawn from the account the sum of $5,375, and that on May 4, six days before the execution of the $5,312.50 note, that amount was withdrawn from the account.

An auditor testified that he did the auditing and accounting work for both appellant and deceased before their marriage and continued to do so until the death of Mr. Johnson; that after the marriage, appellant continued "to treat the money that she had in her separate accounts as her money"; that Mr. Johnson treated the money which he had in his separate accounts as his money; that "So far as we were concerned, from the accounting and bookkeeping records, they kept those accounts separate"; that the loans which appellant made to the deceased were set up as assets of appellant and liabilities of the deceased; that appellant and the deceased made joint income tax returns and the receipts which went into the separate accounts were joined together for purposes of tax returns.

It was further shown that the Diamond T Sales Company, Inc., was chartered as a corporation on April 10, 1936, with a paid-up capital of $10,000. There were 100 shares of the par value of $100.00 each, and deceased owned 80 shares. On April 23, 1951, while deceased owned 75 shares, the charter was amended to increase the capital to $50,000. The increase was accomplished by transferring $40,000 from surplus to capital. A certificate for 300 additional shares was issued to deceased.

There was no jury, and the court found that the notes dated, respectively, February 10, 1949, and May 10, 1949, were without consideration and were not valid claims; that the obligations represented by them constituted part of the community estate; that the note dated January 2, 1945, was valid, but that the interest which purportedly accrued from the date of the marriage until the death of Mr. Johnson was not a valid obligation; and that the stock dividend was the separate property of the deceased.

Appellant contends that it was error to hold that the obligations represented by the notes dated February 10, 1949, and May 10, 1949, constituted part of the community estate, and that those notes were without consideration and were not valid obligations; that even if the money in the bank

in appellant's name was not her separate property, the notes constituted gifts from deceased to appellant and became her separate property. It is also her contention that the stock dividend was community property and not separate property of the deceased.

 We are unable to say that it was established as a matter of law that the bank account in appellant's name, from which the money loaned to the deceased was withdrawn, was her separate property. It was shown that part of that money was from the rents of appellant's separate estate; some of it came from sales of her separate property. It was not shown that these items made up all the funds deposited in those accounts. It being established that some of the money was community property, we think it was appellant's burden to segregate her separate property from the commingled funds. This she did not undertake to do.

 The presumption that a bank account belongs to the person in whose name it is carried does not apply where the contest is between spouses or their successors. Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900; Rippy v. Rippy, Tex.Civ.App., 49 S.W.2d 494, writ refused; Callaway v. Clark, Tex.Civ.App., 200 S.W.2d 447, writ refused. Nor does the fact that the husband concurs with the practice of his wife's putting community funds in her separate bank account constitute conclusive proof that such funds were gifts from the husband to the wife. Hodge v. Ellis, supra. We think the evidence raised issues as to these matters, and the court's finding is binding on us. Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286; 3-B Tex.Jur., p. 457, sec. 941.

 We think the court was justified in holding that the issuance of the stock dividend did not change any part of Mr. Johnson's interest in the corporation from separate to community property. The increase in the value of his stock was caused by the accumulation of surplus out of earnings. It did not increase Mr. John-son's proportionate interest in the assets of the corporation. While a different rule is applied when cash dividends are paid to a spouse on stock separately owned, the increase in the value of stock from earnings is not regarded as community property. Scofield v. Weiss, 5 Cir., 131 F.2d 631; Towne v. Eisner, 245 U.S. 418, 38 S.Ct. 158, 62 L.Ed. 372.

Finding no error, the judgment is affirmed.