**Jacqueline BELL, Appellant,**

v.

**Norman L. BELL, Appellee.**

**No. 7540.**

Court of Civil Appeals of Texas, Beaumont.

Jan. 17, 1974.

Tom Moore Featherston, Port Arthur, for appellant.

Reinstra, Reinstra & Dowell, Beaumont, for appellee.

DIES, Chief Justice.

This is an appeal from a divorce suit wherein Jacqueline Bell (wife) obtained a divorce from Norman L. Bell (husband) and a division of the community property. The wife's first point is "The Court made error in not granting to Plaintiff her community one-half of the properties acquired during marriage in the name of the two Corporations, Bell Oil Company and Bell Oil Company of Louisiana."

The parties were married in November 1964; at the time of the marriage both

corporations were in existence. At the time of the trial (April 1973) the husband owned all of the stock in both corporations as his separate property. The evidence shows that each corporation acquired real estate and other properties during the marriage and that the stockholders' equity in both corporations had substantially appreciated (some $360,579) during the same period.

In his findings of fact, the trial court found:

"That regardless of the legal status of such corporations and the nature of the property acquired by such corporations during the marriage of the parties, the Court finds that considering the circumstances of the parties all of the stock or other interest in such corporations should be and is set aside to Norman L. Bell."

The court in its Conclusions of Law declares:

"The Court concludes that the property acquired by Bell Oil Company and Bell Oil Company of Louisiana during the marriage of the parties does not constitute a part of the community estate of the parties inasmuch as said corporations were neither organized nor operated in fraud of any of the rights of Jacqueline Bell, nor are such corporations the alter ego of Norman L. Bell."

■ Section 3.63, Family Code, V.T.C.A., provides for the trial court to order a division of the estate of the parties in a manner that the court deems just and fair. We are well aware that the appellate courts have held that such division does not have to be equal, that it must be presumed that the trial court exercised its discretion properly, and that a case should be reversed only where there is a clear abuse of discretion. See In re Marriage of McCurdy, 489 S.W.2d 712, 719 (Tex.Civ. App., Amarillo, 1973, error dismissed).

■ We also recognize and adhere to the rule that the increase in value of stock is deemed to be the separate property of the spouse owning the stock. However, we here hold that such rule has no application to the case before us.

Norman L. Bell actively managed and operated these companies as fully as he would have if they weren't incorporated. He testified they were incorporated to limit liability and for tax advantages. If these two oil companies were not incorporated and were individually owned by the husband, the profits derived therefrom would have been community property, even though the companies were his separate property. Hardee v. Vincent, 136 Tex. 99, 147 S.W.2d 1072 (1941); Moss v. Gibbs, 370 S.W.2d 452 (Tex.1963). To us it would be unreasonable to apply one rule to an individually owned situation and another to a corporately owned situation. See 36 Tex.Law Rev. 187 (1957).

We are not disposed to "make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." (Judge Learned Hand in Cabell v. Markham, 148 F.2d 737 (2d. Cir. 1945), reversed; 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

■ We sustain the wife's first point of error, but with these comments. In remanding this case for a new trial we do not direct the trial judge how to divide the property. However, by the finding and conclusion set out above, the trial court has shown that it did not take the two corporations into consideration in making its division. The law of this case stated simply is, if one spouse is the owner of property through the vehicle of incorporation, and transacts business through such corporation, upon a divorce and division of their estate, the trial court shall take into consideration the increase in value of the cor-

porate assets by reason of the business transacted through such corporation during the term of the marriage. This rule is not founded upon fraud, but rather upon the broad principles of equity.

The rule set forth above would have no application to division of property in a divorce suit in which one party owns as separate property, stock in I.B.M., Xerox, or any other corporation in which such party is merely a stockholder. This is true regardless of stock splits, stock dividends, retained earnings, or increase in value. It has limited application to a case similar to the one pending before us. We have not been cited nor have we found an appellate court in this state passing upon the specific question before us. The abuse of discretion in this case is the refusal by the trial court to take these two corporations into consideration in making a division between the parties. This being a case of first impression in this state makes such refusal understandable, but we feel that such a rule must be established so that a trial court may carry out the meaning of Section 3.63, Family Code, V.T.C.A., and divide the estate in a manner that is "just and fair." The record shows that the husband's stock in these two corporations is pledged to secure the payment of a note given by him to a former wife. The import of this opinion is not that the trial court is directed to award the wife either a legal or equitable interest in such corporate stock, but only that the court consider the stock as set forth above in making a division between the parties.

Reversed and remanded.

KEITH, Justice (dissenting).

Today's opinion by the majority is unique. While paying lip service to the rule of law announced in the case of In re Marriage of McCurdy, 489 S.W.2d 712, 719 (Tex.Civ.App., Amarillo, 1973, error dism.), the majority proceeds to contravene the rule there set out.[1] The majority likewise overlooks the rule that where there is some evidence of substantial and probative character supporting the trial court's findings of fact and conclusions of law, such are controlling upon this court. See, e. g., Commercial Union Assurance Company v. Foster, 379 S.W.2d 320, 322 (Tex.1964).

The trial court found as a fact, based upon substantial evidence, that "such corporations are *not* the alter ego of Norman L. Bell but are separate legal entities", and concluded as a matter of law that "said corporations were neither organized nor operated in fraud of any of the rights of Jacqueline Bell." [2]

At the outset, it may be well to refer to several undisputed facts which have not been mentioned in the majority opinion:

(1) All of Norman Bell's stock in the corporation is irrevocably pledged to secure the payment of a promissory note payable to his former wife. This note, dated July 18, 1964, is payable at the rate of $600 per month, the last payment being due in 1989.[3]

(2) A certified public accountant familiar with the books and records testified that, according to generally accepted accounting practice, the gross increase in the stockholders' equity in the two corporations was $196,668—not $360,579, as mentioned

---

1. This is the language used in *McCurdy*, supra: "The provisions of Section 3.63, Texas Family Code, (formerly 4638 V.A.T.S.) do not require the division of property to be equal, and the court is permitted to be controlled by what the facts and circumstances lead him to believe is just and right. . . . Further, it is the duty of the appellate court to indulge every reasonable presumption that the trial court exercised its discretion prop-

erly, and a case should be reversed only where there is a clear abuse of that discretion." (all citations omitted)

2. All emphasis has been supplied unless otherwise indicated.

3. For some of the details surrounding the origin of this note, see Bell v. Bell, 434 S.W.2d 699, 700 (Tex.Civ.App., Beaumont, 1968, error ref. n. r. e.).

in the majority opinion. This difference, according to the accountant, was unrealized capital gain from the sale of some assets of the corporations *before* the marriage of the parties to this suit.

(3) The fact that Norman Bell received a substantial salary from the corporations for his services rendered during the marriage.[4] Mrs. Bell also received a salary from the corporations for her services during the marriage.[5]

(4) Mrs. Bell had a substantial separate estate when she married, handled her own property, and received the income therefrom which she treated as separate—not community property. A considerable amount of interest earned from her separate estate, interest paid by the corporations, was treated as her separate property and she made no attempt to account to the community therefor.

(5) Mrs. Bell received cash deposits in savings and loan associations in excess of $30,000, a promissory note of a solvent third party bearing interest at the rate of 7½% per annum, having a balance due of $34,557.75, payable at the rate of $1,208.95 per month, her own separate estate, and a judgment against Norman L. Bell of $61,000.

(6) Norman Bell, on the other hand, received the real property acquired by the parties during the marriage, but it was incumbered with liens exceeding $100,000 which he was required to assume.

(7) We have balance sheets only in our record. There are no profit and loss statements so that we can determine earnings (profits) from the operation of the business of the corporations. For aught that appears, the increase mentioned in the majority opinion could have been from appreciation in value of fixed assets.

I submit that the trial court was entitled to take these undisputed facts into consideration in partitioning the community estate of the parties. Being charged by § 3.-63, Family Code, V.T.C.A., with ordering a division of the estate of the parties "in a manner that the court deems just and right," the trial judge did just that after concluding, as to the property awarded to each spouse: "The Court concludes that a fair and equitable division of the property of the parties, considering the circumstances of the parties . . . "

The essence of the holding today is that the increase in value of corporate assets becomes community property notwithstanding the stock in the corporation is the separate property of one spouse. *This radical holding, without citation of a single authority, forms the base of an adjudication that the trial court abused the discretion confided in it by statute.*[6]

Having cited *McCurdy*, fn. 1, supra, as its guiding light in the review of the cause, the majority apparently recognizes the rule of law that the judgment of the trial court will be set aside only upon a showing of a clear abuse of discretion. While there are many cases speaking to the subject, one of the most eloquent is that of Justice Funderburk speaking for the court in Borger v. Mineral Wells Clay Products Co., 80 S. W.2d 333, 334 (Tex.Civ.App., Eastland, 1935, no writ) :

"(The writer cannot escape the conviction that in practical effect the exercise of judicial discretion by a trial judge means doing as he pleases, unguided by law, while an abuse of such discretion is

---

4. 1965: $23,375; 1966: $27,407; 1967: $31,239; 1968: $30,040; 1969: $27,538; 1970: $10,600; 1971: $26,400; 1972: $21,-350. The corporation sustained an actual loss in 1970, according to the accountant, which was reflected by a lower salary paid.

5. 1968: $315; 1970: $2,250; 1971: $3,900; 1972: $1,800.

6. I am unimpressed by the reference to Judge Learned Hand's dictum in an old Trading with the Enemy Act case which was reversed; and, neither *Hardee* nor *Moss* cited by the majority touch our case in any manner.

shown when an appellate court is of the opinion that he should have done otherwise.)"

The majority, having determined that he should have done otherwise, now remands this cause to the trial court so that he may again exercise such discretion, but still unguided by law announced by the appellate court.

Instead of the nebulous and ephemeral holding of the majority in this case, I would point out that the well-reasoned case law is to the contrary. For instance, Johnson v. First National Bank of Fort Worth, 306 S.W2d 927 (Tex.Civ.App., Fort Worth, 1957, no writ), is solid authority for affirming the division made here. In the opinion we find this language: "[T]he increase in the value of stock from earnings is *not* regarded as community property." The strength of the *Johnson* opinion lies in the first authority cited: Scofield v. Weiss, 131 F.2d 631 (5th Cir. 1942), written by the late Judge Hutcheson construing Texas law.[7]

In *Scofield,* the Court said:

"It seems to be conceded, but if not, it is well settled that an original issue of corporate stock, which was separate property when issued to the husband, retains its separate character, *no matter how much it increases in value* as a result of surplus accumulated out of the earnings of the corporation. . . . And this is so, though the increased value is largely due to the efforts and activities of the husband as managing officer of the corporation." (131 F.2d at 632, citations omitted)

No mention is made of Wells v. Hiskett, 288 S.W.2d 257 (Tex.Civ.App., Texarkana, 1956, error ref. n. r. e.), which supports the judgment of the trial court in this case. The court noted:

"The trial court found, and correctly so, that the Corporation was not created for

a fraudulent purpose, and that there was no evidence of any fraud perpetrated or practiced against Mrs. Wells in the operation of the Corporation. The record does not contain the slightest suggestion that Mr. Wells was perverting the separate corporate entity in order to circumvent the Texas law or to defraud his wife." (288 S.W.2d at 262)

The language found in 12 Tex.Jur.2d, Community Property, § 35, at 266 (1960), also supports the judgment of the trial court. Commenting upon the fact that cash dividends from separately owned stock are community property, the text continues:

"However, a contrary rule is applied in the case of an increase in the value of stock from corporate earnings. *Such an increase,* more explicitly, is not regarded as community property, but *is deemed to be the separate property of the spouse owning the stock.*"

See also, 1 Speer's Marital Rights in Texas (4th ed. 1961), § 427, p. 631, where the Texas cases on the subject are treated in detail.

Finally, I note that the case of Fain v. Fain, 93 S.W.2d 1226, 1229 (Tex.Civ.App., Fort Worth, 1936, error dism.), is likewise ignored. There, after reviewing the evidence and the controlling authorities, the court concluded that the trial court did not err in refusing to award either a legal or equitable interest in corporate shares of stock owned by the husband at the time of the marriage, notwithstanding the value thereof had increased considerably during the marriage. There, as here, the husband had received a salary for his services rendered to the corporation and the assets of the corporation showed evidence of "fattening" during the marriage.

The unique holding of the majority, completely lacking in judicial or statutory support, creates more problems than it

---

7. In 36 Tex.Law Rev. 187, 188 (1957), the author says: "Scofield v. Weiss represents the most comprehensive discussion of the ap-

plication of Texas law to corporate community property problems." Yet, it is not even mentioned in the majority opinion.

solves. The majority, looking only at the increase in retained earnings, has indicated that such increase may very well be community property. In so holding, the court has opened Pandora's Box. What of the widow who brings into a new marriage as her separate property shares of stock in International Business Machines Corporation? She may have more shares through stock splits, but no one contends that stock dividends constitute community property. More importantly, the enhancement in value, or more strictly speaking, the increase in retained earnings is vulnerable under this holding.[8]

Or, are the husband's shares of stock in Xerox Corporation, inherited from his grandfather who invested in Haloid Corporation, to be subject of the court's discretionary power solely because the retained earnings of Xerox have increased over the period of the marriage?[9]

The action of the court in equating *book value* with either market value or actual value finds the court entering treacherous waters which have long plagued the best members of the investment fraternity. Even among the best run companies, the market frequently pays little attention to book value. Yet, the majority has sent the case back so that the trial court may exercise *again* the discretion confided in it; but, this time no realistic guidelines are established.

The oblique reference to the managerial efforts of the husband as affecting the increase in value leaves me unconvinced. The parties to this marriage received salaries, properly a part of the community estate, commensurate with the efforts expended. In a similar situation, the increase in value of the separately owned stock was held to remain separate property notwithstanding the husband's managerial work on behalf of the corporation. Beals v. Fontenot, 111 F.2d 956 (5th Cir. 1940), cited in *Scofield,* supra.

I need not comment upon the obvious lack of necessary parties to this invitation to perform judicial surgery upon the rights of other parties not present in the litigation. Under the uncontroverted record before us, the rights of Mrs. Bernice Bell, the pledgee of all of Norman Bell's stock, may be seriously impaired by any judgment which requires a divestiture of property owned by the corporations. She is not a party, but her rights are in jeopardy. She may very well be an indispensable party under the rationale of Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891 (Tex.1966).[10]

Other problems are lurking in the shadows of the majority decision in this case without any authoritative guidelines having been laid down. See 22 Baylor Law Rev. 527 (1970), where some problems are discussed generally.

I would have no hesitancy or reluctance in applying the rule announced by the majority to a situation where there was any evidence of the use of the corporate device to thwart the community property rights of the wife.[11] It is sufficient to say that in this case there is no evidence of any such attempt on the part of the husband—a fact and conclusion accepted by the trial court.

8. Retained earnings in IBM more than doubled in a five-year period: from $2,011,380,055 in 1967 to $4,603,239,711 in 1972. Source: 1 Moody's Industrial Manual 1362 (1973).

9. In the same five-year period (1967–1972), the retained earnings of Xerox increased from $247,973,023 to $967,623,000. Source: 2 Moody, supra, at 3310.

10. See Wells v. Hiskett, supra (288 S.W.2d at 262), for a discussion of the authorities as to the necessity of making the corporations parties to this suit.

11. See 1 Speer's, supra, citing Wells v. Hiskett, supra, wherein the author says: "If the corporate entity is used by a spouse in control as a sham or pretense to perpetrate fraud, justify a wrong, or defeat public convenience, the entity should be disregarded in determining the community status of property therein." (§ 427 at 632)

In this time of ever-growing reliance upon the corporate form of doing business, it would be most helpful if we had definitive guidelines laid down by our Supreme Court. However, I must leave to resourceful counsel the task of convincing the Supreme Court that there now is a conflict in decisions on the subject. As a starting point, I recommend Fain v. Fain, supra (93 S.W.2d at 1229).

My disagreement with my brothers on a question of law "material to the decision" may be helpful in procuring such a review. See Bishop v. Bishop, 359 S.W.2d 869, 870–871 (Tex.1962), and Farrell v. Farrell, 374 S.W.2d 870 (Tex.1963).

I am convinced that today's decision is wrong, and I am also apprehensive of its effect upon future litigation if it stands as a precedent. For these reasons, I dissent, respectfully, but vigorously.