In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-07-009 CV


 ______________________


 

STACE CAROL LEGRAND-BROCK, Appellant



V.



ROY RICHARD BROCK, Appellee






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 02-10-06730 CV 






OPINION


 Stace Carol LeGrand-Brock appeals the property division in a divorce decree. She
challenges the trial court's characterization of $6,975,510 as Roy Richard Brock's separate
property. Finding no reversible error, we affirm the trial court's judgment.

 Stace and Roy were married on January 10, 1999. Roy obtained 740.5 shares of
separate property stock in BTH Holdings, Inc. before his marriage to Stace. On February 15,
1999, BTH's board of directors, with the unanimous consent of the stockholders, passed a
resolution to dissolve BTH, liquidate its assets, and distribute the assets pursuant to a plan
of liquidation. The plan of liquidation required the officers of the corporation to pay all of
BTH's current outstanding liabilities, debts, and obligations. All remaining corporate assets
would then be distributed pro rata to the shareholders in complete cancellation or redemption
of all the shares of capital stock. BTH distributed to Roy the following cash distributions:
$4,443,000 on March 5, 1999; $1,406,950 on September 10, 1999; $444,300 on November
5, 1999; and $681,260 on November 23, 2001. (1) A certificate of dissolution was issued on
October 31, 2001.

 Stace filed for divorce on October 10, 2002. The trial court granted the divorce, and
awarded the $6,975,510 in cash distributions to Roy as his separate property. Stace appealed. 
The Supreme Court transferred the appeal to the Tenth Court of Appeals pursuant to a docket
equalization order. In that appeal, Stace argued the trial court erred in refusing to allow her
to present expert testimony regarding the characterization of the cash distributions. 
LeGrand-Brock v. Brock, No. 10-04-00251-CV, 2005 WL 2578944, at *1 (Tex. App.-- Waco
Oct. 12, 2005, no pet.). The Tenth Court of Appeals found that the trial court erred in
refusing to admit the expert testimony "[b]ecause there was a fact issue regarding whether
Roy's stock was exchanged/sold for cash or whether the cash payments were (in whole or
in part) dividends[.]" Id. at *2. The appellate court remanded the cause for further
proceedings. Id.

 On remand, the trial court heard testimony from Stace's accounting expert regarding
the characterization of the cash distributions. The accountant testified the cash distributions
were paid from retained earnings, were liquidating dividends, and should be characterized
as community property. The trial court found that the distributions were not dividends. The
court ruled that Roy had received liquidating distributions pursuant to the dissolution of
BTH, and the distributions were in redemption or cancellation of his separate property stock. 
The property division in the divorce decree remained the same. 

 Stace brings five appellate issues attacking the court's characterization of the
distributions. In issue one, Stace argues the trial court erred in determining the distributions
were separate property because Roy failed to present evidence to overcome the community
property presumption. In issue two, Stace argues the trial court's mischaracterization of the
cash distributions resulted in an inequitable property division. In issue three, she asserts
there is no evidence to support the trial court's finding that the cash distributions were in
cancellation or redemption of Roy's separate property stock. In her fourth issue, Stace argues
there is no evidence to support the trial court's finding that the cash distributions were not
dividends. In issue five, she asserts there is no evidence to support the trial court's
conclusion that the distributions were Roy's separate property and were distributed in
cancellation and redemption of his separate-property stock. She argues the issues together
as a challenge to the characterization of the distributions, and we address the issues together. 
 BTH was a Delaware corporation. Under Delaware law, a dissolving corporation
must first pay its creditors, and then distribute the remaining assets to the stockholders. See
Del. Code Ann. tit. 8, §§ 280, 281 (2007); see generally Tex. Bus. Corp. Act. Ann. art.
6.04 (Vernon Supp. 2007) (distribution under Texas law). (2) The corporation survives for
three years after dissolution to settle and close the business, to dispose of and convey
property, to discharge liabilities and to distribute to the stockholders any remaining assets,
but not for the purpose of continuing the business for which it was organized. Del. Code
Ann. tit. 8, § 278 (2007); see Tex. Bus. Corp. Act. Ann. art. 7.12 (Vernon 2003) (limited
survival after dissolution). 

 Under the Texas Family Code, property owned before marriage is separate property. 
Tex. Fam. Code Ann. § 3.001(1) (Vernon 2006). The parties stipulated the stock was Roy's
separate property. Generally, when a spouse owns separate-property stock in a dissolving
corporation and receives distributions of liquidated assets, the distributions remain the
stockholder's separate property. See Fuhrman v. Fuhrman, 302 S.W.2d 205, 212 (Tex. Civ.
App.--El Paso 1957, writ dism'd) (holding that stock received in liquidation of a corporation
in which husband owned separate stock was husband's separate property); Wells v. Hiskett,
288 S.W.2d 257, 265 (Tex. Civ. App.--Texarkana 1956, writ ref'd n.r.e.) (holding that
because stockholder received a liquidating distribution in the form of an oil and gas lease in
consideration of the cancellation of the stock held in a dissolving corporation, the lease
remained stockholder's separate property as a matter of law). The character of property is
not altered by the sale, substitution, or exchange of the property; separate property that
merely undergoes mutations or changes in form remains separate property. Harris v. Harris,
765 S.W.2d 798, 802 (Tex. App.--Houston [14th Dist.] 1989, writ denied). Distributions
received in exchange for the cancellation of stock upon the corporation's dissolution retain
the character of the stock. See Wells, 288 S.W.2d at 265.

 Stace argues that because BTH distributed the cash from its retained earnings, the
distributions were dividends and therefore community property. In her view, the
distributions were essentially income generated from Roy's separate-property stock and must
be characterized as community property. Her expert witness labeled the cash distributions
as "liquidating dividends." (3) 

 Cash dividends from stock are treated like income, and when distributed during
marriage are community property. Bakken v. Bakken, 503 S.W.2d 315, 317 (Tex. Civ. App.--Dallas 1973, no writ). (4) A distribution by a corporation to its shareholders may constitute a
dividend in law even though not formally designated as a dividend by the board of directors. 
Ramo, Inc. v. English, 500 S.W.2d 461, 465 (Tex. 1973); see also Moroney v. Moroney, 286
S.W. 167, 169-70 (Tex. Comm'n App. 1926, judgment adopted) (explaining that a
corporation does not have to formally declare a dividend when it sets apart funds for
distribution to its shareholders because it has the legal effect of a declared dividend). The
corporation's earnings or surplus funds normally do not constitute a dividend while they are
retained by the corporation, however. See generally Thomas v. Thomas, 738 S.W.2d 342,
344 (Tex. App.--Houston [1st Dist.] 1987, writ denied) (retained earnings are a corporate
asset); Bryan v. Sturgis Nat'l Bank, 90 S.W. 704, 705 (Tex. Civ. App. 1905, writ ref'd) ("The
accumulated earnings or surplus funds of a corporation constitute a part of its assets, and
belong to the corporation, and not to the stockholders, until they have been declared and set
apart as dividends."). 

 It is undisputed the distributions here were properly made pursuant to a corporate
dissolution. Stace makes no allegation of fraud on the community estate. She makes no
effort to pierce the corporate veil. See, e.g., Boyo v. Boyo, 196 S.W.3d 409, 419 (Tex. App.--Beaumont 2006, no pet.) (corporate veil may be pierced if the corporation is used for the
purpose of fraud). There is no evidence, and Stace does not argue, that BTH's board of
directors declared or otherwise authorized the payments as cash dividends before the
dissolution resolution, or that after liquidating and distributing its assets, BTH somehow
continued to operate as a business. 

 A liquidating distribution includes a transfer of money by a corporation to its
shareholders in liquidation of all or a portion of its assets. See Black Law's Dictionary
508 (8th ed. 2004) (A "liquidating distribution" is "[a] distribution of trade or business assets
by a dissolving corporation or partnership."); see also Tex. Bus. Corp. Act. Ann. art.
1.02(A) (13) (c) (Vernon Supp. 2007) ("'Distribution' means a transfer of money . . . by a
corporation to its shareholders . . . in liquidation of all or a portion of its assets."). The board
resolution required BTH to distribute its remaining assets to its shareholders "in complete
cancellation or redemption of all the shares of capital stock of the Company[.]" It is
immaterial to the characterization of the property in this case that the assets distributed on
dissolution were the corporation's retained earnings. Upon the dissolution of the corporation,
Roy received distributions of $6,975,510 in exchange for his separate property stock. The
cash distributions represented an exchange of Roy's separate property stock for BTH's cash
assets. (5) See generally Harris, 765 S.W.2d at 802; Fuhrman, 302 S.W.2d at 212; Wells, 288
S.W.2d at 265.

 Stace argued to the trial court that the Tenth Court of Appeals remanded the case so
the trial court could listen to her expert's testimony regarding characterization and tracing. (6) 
Stace argues in this Court that because Roy did not present characterization evidence on
remand, Roy failed to rebut the community property presumption. Stace quotes from the
Tenth Court of Appeals's opinion, which stated, "It is unclear from the record how many
shares, if any, were relinquished in connection with each cash payment." LeGrand-Brock,
2005 WL 2578944, at *1. She argues that Roy's failure to present any additional evidence
on remand means there is no evidence to support the trial court's conclusion that the
payments were in exchange for the stock. 

 The Tenth Court of Appeals's opinion also noted, however, that the board of directors
passed a resolution to dissolve BTH on February 15, 1999, and that BTH received a
certificate of dissolution on October 31, 2001 from the State of Delaware. Id. Stace's expert
testified: 

 Once the dissolution was passed the shares were to be cancelled. They could
not have been transferred once they were cancelled . . . . It doesn't matter
whether the shareholders turn in their stock certificates for cancellation or they
are just assumed cancelled. The payout of all retained earnings and profits
renders them worthless and the corporation files its termination with the State
as was done here. 


She testified, "There was ultimate cancellation of the stock . . . when all matters were
done[,]" and although she had no knowledge as to whether the stock was cancelled, "[t]here
should have been[]" and although she had "not seen them," she was "sure there probably
was." 

 BTH was dissolved. The controlling facts in this case were not controverted by
Stace's expert on remand, but were in material respect conceded. The number of shares
exchanged for each liquidating distribution is not determinative. As Stace's expert testified,
the stock was ultimately rendered worthless by the dissolution. Roy's separate-property stock
ownership included the right to share in the distribution of the corporation's assets on
dissolution. See Mischer v. Burke, 456 S.W.2d 550, 554-55 (Tex. Civ. App.--Houston [1st
Dist.] 1970, writ ref'd n.r.e.).

 The characterization of the distributions based on the uncontroverted evidence was
a matter of law for the court to decide. See, e.g., Pace v. Pace, 160 S.W.3d 706, 712 (Tex.
App.--Dallas 2005, pet. denied) (uncontroverted evidence showed house was purchased with
wife's separate fund); Harris, 765 S.W.2d at 802-03 (undisputed evidence showed husband
received partnership interest in prior divorce). Although Stace's expert labeled the cash
distributions as "liquidating dividends," and expressed her opinion that liquidating dividends
should be treated like cash dividends paid by a going corporation, the witness's conclusion
on an issue of law is not controlling. See Greenberg Traurig of N.Y., P.C. v. Moody, 161
S.W.3d 56, 95 (Tex. App.--Houston [14th Dist.] 2004, no pet.) ("It is not the role of the
expert witness to define the particular legal principles applicable to a case; that is the role of
the trial court. . . . As such, an expert may not usurp the trial court's role in trying the case."). 
Roy had no need to present expert testimony on the law. His argument and brief were
sufficient to present the legal question to the trial court. 

 The trial court properly characterized the liquidating distributions as Roy's separate
property. Stace's issues are overruled. The trial court's judgment is affirmed. 

 AFFIRMED.

 

 DAVID GAULTNEY

 Justice 

Submitted on October 11, 2007

Opinion Delivered January 24, 2008 


Before McKeithen, C.J., Gaultney and Kreger, JJ. 
1. As part of the plan of liquidation, Roy also received 740.5 shares of stock in BTH
Property Services, Inc., a wholly-owned subsidiary of BTH Holdings. The parties stipulated
that this stock was Roy's separate property.
2. With regard to the distribution of assets, the current statutes cited contain no
substantive changes from those applicable in 1999.
3. A "liquidation dividend" is defined as "[a] dividend paid to a dissolving corporation's
shareholders, [usually] from the capital of the corporation, upon the decision to suspend all
or part of its business operations." Black Law's Dictionary 513 (8th ed. 2004). 
4. However, stock received as dividends are treated as a mutation of property and take
the character of the stock from which they originated. Tirado v. Tirado, 357 S.W.2d 468,
473 (Tex. Civ. App.--Texarkana 1962, writ dism'd). 
5. Although not governing on the issue of state law presented in this case, the Internal
Revenue Code's tax treatment of liquidating distributions seems comparable. The Internal
Revenue Code states, "Amounts received by a shareholder in a distribution in complete
liquidation of a corporation shall be treated as in full payment in exchange for the stock." 
26 U.S.C. § 331(a) (2002); see also generally Hellmich v. Hellman, 276 U.S. 233, 235, 48
S.Ct. 244, 72 L.Ed. 544 (1928) ("A distribution in liquidation of the assets and business of
a corporation, which is a return to the stockholder of the value of his stock upon a surrender
of his interest in the corporation, is distinguishable from a dividend paid by a going
corporation out of current earnings or accumulated surplus when declared by the directors
in their discretion, which is in the nature of a recurrent return upon the stock." (citing
"Regulations 45, 1919 ed., 237, 240")). 
6. Stace did not object at trial to the trial court proceeding as if the expert testimony
would supplement the record already before the trial court from the previous proceeding. See
Tex. R. App. P. 33.1(a).