COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-08-290-CV

 

 

SUSAN COHEN MANDELL                                                     APPELLANT

 

                                                   V.

 

HAROLD LANCE MANDELL                                                      APPELLEE

 

                                              ------------

 

           FROM
THE 233RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

 

I.  Introduction

Appellant
Susan Cohen Mandell challenges the property division made by the trial court in
her divorce from Appellee Harold Lance Mandell. 
The primary issue that we address is whether the trial court erred by
excluding all of Susan=s evidence valuing Lance=s
interest in Oncology-Hematology Consultants, P.A. (Athe
Association@).  For the reasons set forth below, we will
affirm the trial court=s judgment.








II.  Background[1]

Susan
and Lance, both of whom are physicians, married in 1989.  During the marriage, Lance entered into an
Employment Agreement with the Association. 
Lance also entered into a Stock Purchase Agreement with the
Association.  The Stock Purchase
Agreement states that the Association would sell Lance 22,000 shares of common
stock for $0.50 per share for a total purchase price of $11,000.  Lance tendered a check to the Association for
$11,000. 








Pursuant
to certain terms of the Stock Purchase Agreement, the Association also required
Lance and Susan to sign a Shareholders Agreement. The Shareholders Agreement
specifically addressed stock transfers, including voluntary transfers such as
in the event of retirement or withdrawal from the Association and involuntary
transfers such as in the event of divorce. 
In each of these situations, the Association and/or the other
shareholders possesses the right to purchase the shares at $0.50 per share.  In the event the Amarital
relationship of a Shareholder is terminated by divorce and such divorced
Shareholder does not succeed to his former spouse=s
community interest, if any, in his Shares,@ the Shareholders
Agreement specifically provides that within 180 days, the former shareholder
shall purchase Aall but not less than all of@ his
stock back from his former spouse and sets the purchase price of the stock at
$0.50 per share.  In the event the former
shareholder fails to exercise this right, the right of repurchase for the same
price per share is shifted to the Association. 
According to Lance, the restrictions imposed by the Shareholder
Agreement on the transfer of stock and the contractual repurchase rights vested
in a former shareholder or in the Association are required by Texas laws
providing that only a professional individual may be an owner of the
professional association.[2]  Neither Lance nor Susan signed the
Shareholders Agreement. 

Approximately
three years after Lance had executed the Stock Purchase Agreement, Susan filed
for divorce.  During discovery, Susan
served a subpoena duces tecum on Dr. Jordan, a shareholder of the Association,
seeking payroll records, a list of assets, an inventory, corporate books, and
additional documents.








Approximately
three months later, the Association refunded the $11,000 that Lance had paid
for the 22,000 shares of stock and thereafter wrote him a letter, stating that
it had requested on numerous occasions during the three and a half years since
he had signed the Stock Purchase Agreement that he provide it with a signed
copy of the Shareholders Agreement.  The
Association=s letter stated that because it
had never received a signed copy of the Shareholders Agreement from Lance and
Susan, it had never issued Lance a stock certificate and was therefore electing
to refund the $11,000 that Lance had previously paid.  As a result of these transactions, Lance held
no shares in the Association.

Susan
thereafter joined the Association, among others, in the divorce suit as a
third-party defendant, claiming that it and others had conspired with Lance to
defraud her.  The third-party defendants
answered and filed a motion for summary judgment, which the trial court
initially denied because it found that there were genuine issues of material
fact. 








The
third-party defendants filed a motion for reconsideration of their summary
judgment motion, urging the trial court to find the following as a matter of
law:  (1) Lance=s Stock
Purchase Agreement with the Association was subject to its accompanying
Shareholders Agreement, and (2) the Shareholders Agreement was valid and
enforceable against Susan.  The trial
court reconsidered the third-party defendants= motion
for summary judgment and granted it, ruling that the Stock Purchase Agreement
between Lance and the Association was subject to the terms of the Shareholders
Agreement and that as a matter of law, the Shareholders Agreement between Lance
and the Association was valid and enforceable as to Susan.  Prior to trial, Susan settled her claims with
the third-party defendants and entered into an agreement on the record that the
Association would issue the 22,000 shares of stock to Lance in exchange for an
$11,000 check from the community estate. 
Lance complied by writing the check, and the Association issued the
stock to him.

During
the trial, Lance objected when Susan=s expert
attempted to testify regarding the value of Lance=s stock
in the Association.  The trial court
sustained Lance=s objection, stating that it had
previously ruled by granting the third-parties= motion
for summary judgment that pursuant to the terms of the Stock Purchase Agreement
and the Shareholders Agreement, the value of the 22,000 shares of stock in the
Association was $11,000 and that the parties were bound by the agreements.  Outside the jury=s
presence, Susan made an offer of proof of her experts=
testimony concerning the valuation of Lance=s
interest in the Association.








After a
multi-day jury trial, the jury made the following determinations that are
pertinent to the issues on appeal:  (1)
that the marriage between Susan and Lance had become insupportable because of
discord or conflict; (2) that the value of the real property at 5017 River
Bluff Drive was $244,440; (3) that the amount of attorney=s fees
reasonably and necessarily incurred by Susan was $275,000; and (4) that the
amount of attorney=s fees reasonably and
necessarily incurred by Lance was $0. 
Lance thereafter filed a motion for judgment notwithstanding the
verdict, arguing that the uncontroverted testimony and exhibits that were
admitted into evidence established that the reasonable and necessary attorney=s fees
he had incurred totaled $200,000.

After
reviewing the value of the community property assets, the trial court=s final
decree of divorce divided the community property as follows:


 
 
  
  
 
 
  
 Susan
 
 
  
 Lance
 
 
 
 
  
 Residence located at
 5017 River Bluff
 
 
  
 $244,440.00
 
 
  
  
 
 
 
 
  
 50% Citizen=s Nat=l Bank Money Mkt Acct
 #[----][3]
 
 
  
 $18,738.11
 
 
  
 $18,738.11
 
 
 
 
  
 50% Wells Fargo Bank
 Acct #[----]
 
 
  
 $10,365.32
 
 
  
 $10,365.32
 
 
 
 
  
 50% Bank of America
 Savings Acct #[----]
 
 
  
 $10,165.51
 
 
  
 $10,165.51
 
 
 
 
  
 50% Wachovia Investment
 Acct #[----]
 
 
  
 $316,622.56
 
 
  
 $316,622.56
 
 
 
 
  
 50% Fidelity IRA
 #[-----]
 
 
  
 $146,467.23
 
 
  
 $146,467.23
 
 
 
 
  
 50% Fidelity
 Investments Acct #[----]
 
 
  
 $60,522.09
 
 
  
 $60,522.09
 
 
 
 
  
 100% Franklin Templeton
 Mut. Fund Acct #[----]
 
 
  
 $126,723.20 
 
 
  
  
 
 
 
 
  
 2000 Lexus RX 300
 
 
  
 $14,625.00
 
 
  
  
 
 
 
 
  
 100% Bank of America
 Money Mkt Acct #[----]
 
 
  
  
 
 
  
 $28,719.83
 
 
 
 
  
 100% Fidelity
 Investments IRA #[----]
 
 
  
  
 
 
  
 $120,564.47
 
 
 
 
  
 100% Fidelity
 Investments Acct #[----]
 
 
  
  
 
 
  
 $46,616.62
 
 
 
 
  
 100% Franklin Templeton
 Acct #[----]
 
 
  
  
 
 
  
 $156,433.20
 
 
 
 
  
 2004 Acura MDX
 
 
  
  
 
 
  
 $23,900.00
 
 
 
 
  
 22,000 shares of the
 Association
 
 
  
  
 
 
  
 $11,000
 
 
 
 
  
 Total
 
 
  
 $948,669.02
 
 
  
 $950,114.94
 
 


 

The
trial court acknowledged that the jury had rendered a unanimous verdict on the
issue of reasonable and necessary attorney=s fees
incurred by Susan and that the amount for trial was $275,000.  The trial court, however, ordered that Ato
effect an equitable division of the estate of the parties= [sic]
and as a part of the just and right division of property, . . . each party
shall be responsible and liable for the payment of the balance of his or her
own attorney=s fees . . . .@ 

Following
the entry of the judgment, Susan filed a request for findings of fact and
conclusions of law, as well as a motion for new trial.  In her motion for new trial, Susan argued
that the trial court erred by refusing to allow her to present expert testimony
to the jury concerning the value of the 22,000 shares of stock in the
Association. 








The
trial court made findings of fact and conclusions of law setting forth the same
property divisions as it had made in the decree and stated that it had made Aa
determination of a just and right division of the assets and debts of the
marital estate@ by considering, among
other things, monetary sanctions awarded to Susan against Lance; fault in the
breakup of the marriage; and the finding by the court as a result of the
summary judgment proceedings that the value of the 22,000 shares of stock in
the Association was $11,000.  The trial
court also stated that in making the property division, it had taken into
consideration that it had made no order for the award or payment of attorney=s fees
to be paid by Lance to Susan and that the division of the marital estate was
disproportionate in Susan=s favor.[4]

Susan
filed objections to the trial court=s
findings of fact and conclusions of law and requested additional findings.  Susan argued that the trial court erred when
it purportedly used the method for a physician=s
withdrawal set forth in the Stock Purchase Agreement and unsigned Shareholders
Agreement in determining the value of Lance=s 22,000
shares of the Association because Lance was not being terminated or withdrawing
at the time of the parties=
divorce.  Susan argued, as she had in her
motion for new trial, that the jury should have been allowed to determine the
fair market value of Lance=s
interest in the Association as an ongoing business. 








The
trial court did not make additional findings. 
This appeal followed.

III.  The Association=s
Stock

 

As set
forth above, the Shareholders Agreement restricts who may own and purchase the
Association=s stock as well as the price at
which the stock may be sold, $0.50 per share. 
In her first, second, and third issues, Susan argues that the trial
court erred when it used the Shareholders Agreement to value Lance=s 22,000
shares in the Association at $11,000 and then excluded all evidence that she
attempted to put before the jury. 
Specifically, Susan argues that the Shareholders Agreement does not
establish the fair market value of Lance=s
interest in the ongoing business of the Association.

A.     Types of Valuation

As a
general rule, the value to be accorded community property that is to be divided
in a divorce proceeding is Amarket
value.@  See R.V.K. v. L.L.K., 103 S.W.3d 612,
618 (Tex. App.CSan Antonio 2003, no pet.)
(citing Walston v. Walston, 971 S.W.2d 687, 690 (Tex. App.CWaco
1998, pet. denied)).  AFair
market value has been consistently defined as the amount that a willing buyer,
who desires to buy, but is under no obligation to buy would pay to a willing
seller, who desires to sell, but is under no obligation to sell.@  Id. (quoting Wendlandt v. Wendlandt,
596 S.W.2d 323, 325 (Tex. Civ. App.CHouston
[1st Dist.] 1980, no writ).








A
straight fair market value is not an appropriate valuation method, however,
when a community estate owns shares in a closely held corporation and, by
agreement, any sale of the shares of stock is restricted to the corporation or
other stockholders.  See Beavers v.
Beavers, 675 S.W.2d 296, 299 (Tex. App.CDallas
1984, no writ).  When the sale of stock
is restricted by a requirement that the shares be offered first to the
corporation or to other shareholders, then essentially the fair market value of
the stock is zero.  See id.[5]  In this situation, the parties may show the
actual value of the property interest to the owner.  See R.V.K., 103 S.W.3d at 618.  Such evidence might include the value of
being able, by virtue of ownership of the closely held stock, to drive a new
automobile, to have health insurance paid for by the company, to have a company-financed
life insurance policy, to belong to a country club at company expense, and
other similar financial benefits.  See
James M. Loveless & Kimberly M. Naylor, Handling a Divorce Involving a
Closely-Held Corporation, State Bar of Texas Prof. Dev. Program, Marriage
Dissolution Institute, M, M-3 (1996).








Generally
Accepted Accounting Principles, or GAAP, Aencompasses
the conventions, rules, and procedures that define accepted accounting practice
at a particular point in time.@  Rowan Cos. v. Wilmington Trust Co.,
No. 14-07-00465-CV, 2009 WL 3210936, at *12 (Tex. App.CHouston
[14th Dist.] 2009, Oct. 8, 2009, no pet.) (op. on reh=g)
(quoting Shalala v. Guernsey Mem=l Hosp., 514
U.S. 87, 101, 115 S. Ct. 1232, 1239 (1995)). 
Book value is the value shown by the books of a business, which are kept
in compliance with GAAP, in the absence of an agreement otherwise.  Chaffe v. Murray, 492 S.W.2d 680, 684
(Tex. Civ. App.CCorpus Christi 1973, writ ref=d
n.r.e.).  Specifically, the term Abook value@ means
the value of a corporation that is arrived at by taking the total value of the
assets as shown on the books and deducting therefrom the total
liabilities.  Id.  Book value has limited application, if any, in
determining the value of stock in a small, closely held corporation.  See Bendalin v. Delgado, 406
S.W.2d 897, 900B01 (Tex. 1966).








Another
valuation method is the comparable sales method.[6]  This method compares the property being
valued with similar, recently-sold property, and values the to-be-valued
property in relation to the recent sales prices for similar property.  See, e.g., Religious of Sacred
Heart of Tex. v. City of Houston, 836 S.W.2d 606, 616 (Tex. 1992); see
also Gary L. Nickelson, Special Problems for Divorcing Professionals and
Valuation of Professional Practices, Vol. 2 State Bar, Advanced Family Law
Course, KK, 10 (1998) (recognizing that if comparable sales exist Athey
certainly should be considered as a measure of value@).

B.     Evidence of Valuation

In this
case, Susan=s valuation evidence was
presented through an offer of proof. 
Karl Weaver, a certified public accountant and chief financial officer
for the Association, testified that he did not know what the contractual
$11,000 purchase price was based on. 
Weaver said that the book value of the Association in 2006 was $5
million. 

Bryan
Charles Rice, a certified public accountant specializing in business appraisals
and forensic accounting, testified that he had looked at the books for the
Association, as well as Matrix Holdings and Operation Pathway Systems, L.P.,
which provides management services to the Association.  Rice explained that 88,000 shares of common
stock in the Association were outstanding and that three other
doctor-shareholders in the Association each owned 22,000 shares of stock so
that Lance owned a one-fourth interest in the Association.








Rice
calculated the book value of the Association=s equity
under GAAP and concluded that under this valuation theory, Lance=s
one-fourth interest in the Association was worth $794,300.  Rice determined that the fair market value of
Lance=s
one-fourth interest in the Association, considering the Association=s equity
as a stand-alone business, was $1,100,100. 
Rice also determined the fair market value of Lance=s
one-fourth interest in the Association, considering the Association=s equity
as a Matrix Holdings component, was $943,400. 
Thus, Susan offered expert testimony via her offer of proof proposing
three different methods to value the Association as an ongoing business
resulting in three different figures as the value of Lance=s
one-fourth interest in the Association: 
$794,300 (book value under GAAP); $1,100,100 (fair market value
considering Association equity as a stand alone business); and $943,400 (fair
market value considering Association equity as a component of Matrix).








Lance=s
valuation evidence in the record, which was confirmed through his
cross-examination of Weaver during Susan=s offer
of proof, conclusively established that when three of the Association=s seven
physician-shareholders retired or left the practice, they were each paid $0.50
a share for their shares of stock pursuant to the Shareholders Agreement.  Each of the physician-shareholders had
purchased their stock for $0.50 a share years before they retired or left the
practice.[7]

C.     Division of Community
Property

In a
divorce proceeding, the trial court is charged with dividing the community
estate in a Ajust and right@ manner,
considering the rights of both parties. 
Tex. Fam. Code Ann. ' 7.001
(Vernon 2006); Boyd v. Boyd, 131 S.W.3d 605, 610 (Tex. App.CFort
Worth 2004, no pet.).  Trial courts are
afforded wide discretion in dividing marital property upon divorce; therefore,
a trial court=s property division may not be
disturbed on appeal unless the complaining party demonstrates from evidence in
the record that the division was so unjust and unfair as to constitute an abuse
of discretion.  Jacobs v. Jacobs,
687 S.W.2d 731, 733 (Tex. 1985); Boyd, 131 S.W.3d at 610.








To
determine whether a trial court abused its discretion, we must decide whether
the trial court acted without reference to any guiding rules or principles; in
other words, we must decide whether the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241B42 (Tex. 1985), cert. denied,
476 U.S. 1159 (1986).  We must indulge
every reasonable presumption in favor of the trial court=s proper
exercise of discretion in dividing marital property.  Boyd, 131 S.W.3d at 610.  Accordingly, we will reverse only if the
record demonstrates that the trial court clearly abused its discretion, and the
error materially affected the just and right division of the community
estate.  Id.








A spouse
is not entitled to a percentage of his or her spouses=s future
earnings.  Von Hohn v. Von Hohn,
260 S.W.3d 631, 640B41 (Tex. App.CTyler
2008, no pet.).  A spouse is only
entitled to a division of property that the community owns at the time of
divorce.  Id.  A corporation is a separate legal entity, and
property owned by a corporation is neither separate nor community property of
the shareholders of the corporation.[8]  See Barbara Anne Kazen, Vol. 1 Kazen=s
Practical Family Law Manual, Pamph. 6, & 5.21[c]
(1996).  Likewise, by statute, a
professional association has the same powers, privileges, duties, restrictions,
and liabilities as a for-profit corporation. 
See Tex. Bus. Orgs. Code ' 2.108
(Vernon Pamph. Supp. 2009).[9]  Although dividends from stock are treated
like income, a corporation=s
earnings or surplus funds normally do not constitute a dividend while they are
retained by the corporation.  See,
e.g., Legrand-Brock v. Brock, 246 S.W.3d 318, 322 (Tex. App.CBeaumont
2008, pet. denied).

Here,
the Association is by law the equivalent of a for-profit corporation. See
Tex. Bus. Orgs. Code Ann. '
2.108.  The Association=s
property, accounts receivable, retained earnings, and surplus funds are not
assets of Susan and Lance=s community estate.  See Legrand-Brock, 246 S.W.3d at
322.  Thus, they were not subject to
division by the trial court.  See
Tex. Fam. Code Ann. ' 7.001.  The community asset in existence at the time
of Lance and Susan=s divorce was 22,000 shares of
the Association=s closely-held stockCnot the
Association as an ongoing business.[10]  Susan nonetheless argues that the trial court
abused its discretion by prohibiting her from offering expert testimony
concerning the Association=s value
as an ongoing business and calculating Lance=s
interest in the Association as one-fourth of that valuation.


















For the
proposition that she was entitled to prove the value of Lance=s
one-fourth interest in the Association as an ongoing business, Susan relies
upon Von Hohn, 260 S.W.3d at 640B41, Keith
v. Keith, 763 S.W.2d 950, 952 (Tex. App.CFort
Worth 1989, no writ), and Finn v. Finn, 658 S.W.2d 735, 740 (Tex. App.CDallas
1983, writ ref=d n.r.e.).  These cases are not applicable to the present
facts for two primary reasons.  First,
the property being valued for purposes of divorce in those cases was not stock
in a closely held corporation but a spouse=s
interest in an ongoing partnership. 
Partnership profits, by law, belong to the individual partners; the
assets and profits of a professional association belong to the entity.  Compare Tex. Bus. Orgs. Code Ann. ' 152.202(c)
(providing that each partner in a partnership is credited with an equal share
of the partnership=s profits) with id. ' 302.011
(providing that profits of a professional association are distributed in
accordance with governing documents of association).  Thus, increases in the value of a partnership
that accrue during a partner=s
marriage may be an asset of the community estate, while increases in a
corporation=s net worth are generally not an
asset of the community estate of each of the corporation=s
shareholders.  Compare Von Hohn,
260 S.W.3d at 634, 636B37 (recognizing that each
partner was assigned Aan undivided profits account and
a capital account@; this was clearly an asset of
the community) with Legrand-Brock, 246 S.W.3d at 322 (explaining
that corporations= earning surplus funds are not a
community asset).  Second, the
partnership agreements in Von Hohn, Keith, and Finn,
unlike the Stockholders Agreement here, did not mandate application of a
particular value to the spouse=s
partnership interest in the event of a divorce. Compare Von Hohn, 260
S.W.3d at 640 (explaining that partnership agreement set value of partner=s
interest in event of partner=s death,
withdrawal, retirement, or expulsion but did not control value of individual
partnership interest in event of divorce), and Keith, 763 S.W.2d
at 953 (same), and Finn, 658 S.W.2d at 749 (same) (Stewart, J.,
concurring)[11]
with Tex. Bus. Orgs. Code Ann. ' 21.104
(Vernon Pamph. Supp. 2009) (providing that shareholders agreement is effective
between shareholders and the corporation). 
Because the Shareholders Agreement here does contain a specific
contractual provision addressing stock ownership and value in the event of a
shareholder=s divorce and does restrict who
may own and purchase the Association=s stock
as well as the price at which the stock may be sold, Von Hohn, Keith,
and Finn are not controlling.  See
Tex. Bus. Orgs. Code ' 21.104.  We hold that the trial court did not abuse
its discretion by excluding Susan=s
$794,300 one-fourth book value of the Association and her $1,100,100 and
$943,400 one-fourth fair market values of the Association as an ongoing business.








Susan
also contends that she is not bound by the Abuy-sell@
provision in the Shareholders Agreement setting the stock=s value
at $0.50 per share because she never signed the Shareholders Agreement and
that, accordingly, the trial court abused its discretion by determining that as
a matter of law Lance=s 22,000 shares of the
Association were valued at $11,000.  It
is undisputed that every shareholder of the Association paid $11,000 for their
22,000 shares of stock when the stock was issued to them and that every
shareholder that left the Association was paid $11,000 for the Association to
repurchase their 22,000 shares of stock. 
It is undisputed that Lance and Susan=s
community estate paid $11,000 to the Association for the issuance of Lance=s 22,000
shares of stock.  And finally, it is
undisputed that Lance can never sell his 22,000 shares of stock for more than
$11,000; the stock=s value in the closely held
Association is contractually set at $11,000. 
See Lemaster v. Top Level Printing Ink, Inc., 136 S.W.3d 745, 747B48 (Tex.
App.CDallas
2004, no pet.).  Nonetheless, Susan
claims the stock should be valued at either $794,300 (book value under GAAP);
$1,100,100 (fair market value considering Association equity as a stand alone
business); or $943,400 (fair market value considering Association equity as a
component of Matrix).  But Susan cites no
authority for the proposition that a community asset (22,000 shares of the
Association=s stock) which is to be divided
in a divorce, may have one monetary value as to one spouse ($11,000 as to
Lance) and a wholly different value to the other spouse ($794,300, $1,100,100,
or $943,400 as to Susan).  Nor have we
located any such authority.  Because the
evidence establishes the Acomparable sales value@ for
Lance=s 22,000
shares of the Association=s stock was $11,000 based on
prior sales by former physician-shareholders and because $11,000 is the only
price that Lance=s stock may be sold at, the
trial court did not abuse its discretion by valuing the stock at $11,000 under
a comparable sales valuation and as mandated by the Shareholders Agreement even
though Susan did not sign it.








Susan=s offer
of proof likewise did not include evidence that the actual value of the stock
to Lance was greater than the $11,000 Abuy/sell@ price
by showing that by virtue of ownership of the closely held stock, he obtained
benefits such as driving a new automobile, having health insurance paid for by
the company, having a company-financed life insurance policy, belonging to a
country club at company expense, or gaining any other similar financial
benefit.  See R.V.K., 103 S.W.3d
at 618.  Because Susan=s offer
of proof did not include testimony or evidence that might have been relevant to
establish that the value of Lance=s shares
of stock to him was greater than the $11,000 value set by the Shareholders
Agreement, the trial court did not abuse its discretion by refusing to admit
the valuation evidence propounded by Susan. 
Accord Fletcher v. Minn. Mining & Mfg. Co., 57 S.W.3d 602,
607 (Tex. App.CHouston [1st Dist.] 2001, pet.
denied) (recognizing that to preserve error concerning the exclusion of
evidence, the complaining party must actually offer the evidence and secure an
adverse ruling from the court); see also Tex. R. Evid. 103(a), (b). 

We
overrule Susan=s first, second, and third
issues.

IV.  Attorney=s Fees

In her
fifth and sixth issues, Susan complains that the trial court erroneously
granted Lance=s motion for judgment
notwithstanding the jury=s verdict that he incurred $0 in
reasonable and necessary attorney=s fees,
erroneously valued the parties=
attorney=s fees,
and thereby abused its discretion in the overall division of the community
estate. 








Although
there is no statute specifically authorizing an award of attorney=s fees
in a divorce proceeding, the trial court may within its sound discretion award
attorney=s
fees.  See In re Marriage of Jackson,
506 S.W.2d 261, 268 (Tex. Civ. App.CAmarillo
1974, writ dism=d).  The fee of an attorney is but another element
for the court to consider in dividing the marital estate.  Hopkins v. Hopkins, 540 S.W.2d 783,
788 (Tex. Civ. App.CCorpus Christi 1976, no
writ).  That is, in a divorce suit, the
trial court has the equitable power to award either spouse attorney=s fees
as a part of the just and right division of the marital estate.  See, e.g., Murff v. Murff, 615 S.W.2d
696, 699 (Tex. 1981); Carle v. Carle, 149 Tex. 469, 474, 234 S.W.2d
1002, 1005 (1950).

Here,
the trial court=s judgment expressly provides
that

to effect an equitable division of the estate of the parties= and as a part of the
just and right division of property, and for services rendered in connection
with conservatorship and support of the children, each party shall be
responsible and liable for the payment of the balance of his or her own
attorney=s fees, expert witness
fees, expenses, and costs incurred as a result of legal representation in this
case.

 

Thus, although the trial court
granted Lance=s motion for judgment
notwithstanding the verdict, set aside the jury=s
finding that Lance had incurred $0 in reasonable and necessary attorney=s fees,
and found that Lance had conclusively established reasonable and necessary
attorney=s fees
in the amount of $200,000, Susan is not responsible for payment of any of Lance=s
attorney=s fees.  The judgment requires each party to pay any
balance owed on their own attorney=s
fees.  Although Susan is not required to
pay Lance=s attorney=s fees
out of her property award, she nonetheless complains that the trial court erred
by granting Lance=s motion for judgment
notwithstanding the verdict on the jury=s finding
that Lance had incurred $0 in reasonable and necessary attorney=s fees.













Assuming
that the trial court did err by granting Lance=s motion
for judgment notwithstanding the verdict concerning his attorney=s fees,
Susan has not shown that any such error Aprobably
caused the rendition of an improper judgment.@  See Tex. R. App. P. 44.1(a)(1)
(providing that no judgment in a civil case may be reversed for an error of law
unless the error probably caused rendition of an improper judgment).  The trial court possesses broad discretion to
award either spouse attorney=s fees
as a part of the just and right division of the marital estate; here it chose
to require the parties to pay their own fees. 
Nothing in the record before us supports the proposition that the trial
court would have ordered Lance to pay Susan=s
attorney=s fees
but for the granting of the judgment notwithstanding the verdict.  In fact, a review of the list of factors set
forth in the trial court=s findings of fact as factors
the trial court considered in making its division of the community estateCincluding
an award of sanctions against Lance and in favor of SusanCequally
supports the notion that the trial court would not have ordered Lance to pay
for Susan=s attorney=s fees
even if the trial court had not granted Lance=s motion
for judgment notwithstanding the verdict. 
Because Susan has not shown that any error by the trial court in
granting Lance=s motion for judgment
notwithstanding the verdict, setting aside the jury=s
finding that Lance had incurred $0 in reasonable and necessary attorney=s
fees,  and finding that Lance had
conclusively established that he had incurred reasonable and necessary attorney=s fees
in the amount of $200,000 probably resulted in the rendition of an improper
judgment, we overrule Susan=s fifth
and sixth issues.

V.  Conclusion

We have
overruled Susan=s first, second, third, fifth,
and sixth issues.  We need not address
Susan=s fourth
issue because it complains of the summary judgment granted to the third-party
defendants; Susan settled any and all of her claims with the third-party
defendants prior to trial and those defendants are not parties to this appeal.[12]  Accordingly, we affirm the trial court=s
judgment.

 

SUE WALKER

JUSTICE

 

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

 

DELIVERED: March 18, 2010











[1]The record from this
divorce spans twenty-six volumes of the reporter=s record and over
seventeen hundred pages in the clerk=s record. 
The following is an overview of the facts; it is limited to the facts
relevant to the issues on appeal.





[2]See Tex. Bus. Orgs. Code '' 301.003, .004, .007 (Vernon
Pamph. Supp. 2009) (providing that the owners of a professional association
must be licensed to perform the type of service for which the association is
formed).





[3]The account numbers set
forth in the decree are omitted for privacy reasons.





[4]The division of the
community assets, as set forth above, indicates a relatively equal division
between the parties.





[5]See also Edwin Terry et al., Handling
the Divorce Involving a Medical Practice, State Bar of Texas Prof. Dev.
Program, Marriage Dissolution Institute, B, B-5 (1996) (explaining that Athe concept of market
value assumes an existing, established market@ and that Aas a practical matter
there is often little or no actual market for a closely-held medical practice .
. . .  Therefore other methods of value
must be used@).





[6]See Handling the Divorce
Involving a Medical Practice, State Bar of Texas Prof. Dev. Program, Marriage
Dissolution Institute, at B-5.





[7]Dr. Clibon and Dr. Friess
sold their shares after practicing ten to twelve years with the Association.





[8]Exceptions exist when a
trial court properly disregards the corporate entity, but none of those
exceptions were pleaded or proved here.  See,
e.g., Zisblatt v. Zisblatt, 693 S.W.2d 944, 950 (Tex. App.CFort Worth 1985, writ
dism=d).





[9]The statutory provisions
governing for-profit corporations (Texas Business Organizations Code Annotated
chapters 21 and 22) apply to a professional association.  See Tex. Bus. Orgs. Code Ann. ' 302.001 (Vernon Pamph.
Supp. 2009).  And under chapter 21, a
close corporation existing before the effective date of the Texas Business
Organizations Code is a close corporation governed by the code.  See id. ' 21.707(b).





[10]Rice excluded goodwill
from his valuation of Lance=s interest in the Association; goodwill is not an
issue in this appeal.  See
Nickelson, Special Problems for Divorcing Professionals and Valuation of
Professional Practices, KK, at 4B9.





[11]On the issue of valuation
of the husband=s partnership as an
ongoing business when valuation was not controlled by the partnership
agreement, the majority opinion in Finn simply held that the trial court
erred by denying the wife full discovery of certain financial information
concerning the husband=s partnership.  658 S.W.2d at 746.  The majority opinion in Finn held that
this denial of discovery was reasonably calculated to and probably did result
in the rendition of an improper judgment. 
Id.  Here, however, Rice
specifically testified that he had Aall the financial information@ that he needed to
perform the valuations that he did.  Thus,
Finn is not applicable to the facts here.





[12]Susan expressly settled Aall claims set out in the
various pleadings@ filed by her against the
third-party defendants as well as Aall claims that were asserted, that could have
been asserted@ by her against the
third-party defendants.  Susan did not
file any type of motion in the trial court revoking her consent to the
settlement or seeking to set it aside; she cannot now claim on appeal that the
third-party defendants (against whom she now possesses no unsettled claims)
should not have been granted a summary judgment.  Accord Henderson Edwards Wilson, L.L.P. v.
Toledo, 244 S.W.3d 851, 855 (Tex. App.CDallas 2008, no pet.) (recognizing principle that
party with no justiciable interest in suit has no standing to appeal ruling in
suit).